REYBURN LAWN & LANDSCAPE DESIGNERS, INC., AP-
PELLANT, *v.* PLASTER DEVELOPMENT COMPANY,
INC., A NEVADA CORPORATION, RESPONDENT.

No. 53518

June 2, 2011                                      255 P.3d 268

*Lemons, Grundy & Eisenberg* and *Robert Eisenberg*, Reno; *Luh
& Associates* and *Charlie H. Luh*, Las Vegas, for Appellant.

*Lewis & Roca, LLP,* and *Daniel F. Polsenberg, Joel D. Henriod, Jennifer B. Anderson,* and *Jacqueline A. Gilbert,* Las Vegas; *Pengilly Robbins Slater and Bell* and *James W. Pengilly* and *John R. Bell,* Las Vegas, for Respondent.

Before Douglas, C.J., Pickering and Hardesty, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider whether an indemnity clause in a construction contract between a general contractor and a subcontractor obligates the subcontractor to indemnify the general contractor for its partial negligence for constructional defects, regardless of whether the subcontractor is also negligent. In this, we must also determine whether the subcontractor's testimony constituted a judicial admission by a party, rendering it automatically negligent and liable for indemnification. Additionally, we consider the scope of the indemnification clause's duty to defend and appellant's argument that attorney fees and costs in indemnity cases should be apportioned according to the percentage of negligence of the indemnitor.

This appeal arises from a constructional defect action in which a group of homeowners brought suit against the developer and general contractor, respondent Plaster Development Company, Inc. Plaster then filed a third-party complaint against its subcontractor, appellant Reyburn Lawn & Landscape Designers, Inc., based on Reyburn's indemnification obligation and failure to defend Plaster pursuant to the indemnity clause in their contract. During trial, Plaster moved for and was granted judgment as a matter of law after the district court considered Reyburn's owner's testimony to be a judicial admission of liability. As a result of the order granting judgment as a matter of law, the district court precluded Reyburn from submitting any jury instructions, limited the scope of Reyburn's closing argument, and did not allow the jury to determine Reyburn's liability for the constructional defects. Ultimately, the jury found Plaster 99 percent at fault.[2] The district court held Reyburn liable for the resulting judgment, and Reyburn appealed.

Consistent with our holding in *George L. Brown Insurance v. Star Insurance Co.*, 126 Nev. 316, 237 P.3d 92 (2010), explaining that the intent of the parties to indemnify another's negligence must be explicitly stated within the contract, we conclude that the indemnification clause in the parties' contract here did not explicitly or expressly state that Reyburn would have to indemnify Plaster for Plaster's own negligence. Rather, the clause links Reyburn's indemnification and defense duties to defects caused or allegedly caused by Reyburn, only. In this, we extend the holding in *Brown* to require express language of indemnification for contributory negligence as well as the sole negligence of the indemnitor.

Because the district court's indemnification determination was based on its conclusion that Plaster was not solely negligent, since

---

[2]One percent of the fault was apportioned to the homeowners.

Reyburn had admitted liability at trial, we also take this opportunity to address the standards for determining judicial admissions resulting from oral testimony at trial. Because Reyburn's owner's testimony was not a deliberate, clear, and unequivocal statement of a concrete fact, it was not a judicial admission; and because there was conflicting evidence of Reyburn's liability, we conclude that the district court erred in granting Plaster's motion for judgment as a matter of law on Plaster's contractual indemnity and breach of contract causes of action.

Finally, based on our conclusion that the duty to defend extended only to claims connected with Reyburn's potential negligence, we further conclude that any award of attorney fees to Plaster should have been limited to those fees and damages incurred defending against the causes of action concerning Reyburn's scope of work, not the entire amount of damages and all attorney fees and costs Plaster incurred throughout this eight-year litigation. We therefore reverse the district court's judgment and remand this matter for a new trial.[3]

## FACTS

### Historical facts

Plaster was the developer and general contractor of the Marble Canyon residential construction project in Las Vegas. The terrain of the project required the use of retaining walls to support the residential building lots. The project also required the construction of sidewalls, which were not retaining walls, but rather served as "fence walls."

Plaster contracted with Bill Young's Masonry, Inc., to construct and backfill the retaining walls and to construct the sidewalls. Plaster contracted with Reyburn to perform the rough and final grading of the building lots, but Reyburn did not design or construct any of the retaining walls and sidewalls in Marble Canyon. Rough grading occurs after the concrete pad or foundation of the home has been poured and establishes the basic elevation and drainage of the lot. Finish grading occurs near the end of construction and, in this case, required Reyburn to apply four inches of sand, or topsoil, on the lot and grade it to allow water to drain away from the home, retaining walls, and sidewalls. The sidewalls were not constructed until after the final grading was completed. Once Bill Young's Masonry finished building the sidewalls, Reyburn completed its duties by clearing away any excess materials.

---

[3]Because we reverse on other grounds and remand for a new trial, we do not address Reyburn's argument that the new district judge who was assigned to the case post-trial was not sufficiently familiar with the issues and evidence to determine the then-pending post-trial motions.

The contract between the contractor, Plaster, and the subcontractor, Reyburn, contained the following indemnification clause:

> *INDEMNITY*: . . . Subcontractor agrees to save, indemnify and keep harmless Contractor against any and all liability, claims, judgments or demands, including demands arising from injuries or death of persons (Subcontractor's employees included) and damage to property, arising directly or indirectly out of the obligation herein undertaken or out of the obligations conducted by Subcontractor, save and except claims or litigation arising through the sole negligence or sole willful misconduct of Contractor, and will make good to and reimburse Contractor of any expenditures, including reasonable attorney's fees. If requested by Contractor, Subcontractor will defend any such suits at the sole cost and expense of Subcontractor.

Soon after homeowners moved into Marble Canyon in 1996, they made general complaints about both the retaining walls and the sidewalls. Eventually, they hired an independent engineer to evaluate the structural integrity of the walls, and the results, showing that the walls were engineered and installed improperly, were provided to Plaster. Plaster responded that the walls were in compliance with all applicable codes and had passed inspection.

### Procedural facts

The homeowners filed a class-action complaint against Plaster in May 2000, alleging that their perimeter retaining walls and sidewalls were defective as a result of improper design, preparation, materials, and construction. In November 2001, 18 months after initiation of the litigation and 5 years after the homeowners first complained about the walls, Plaster, for the first time, notified Reyburn of the alleged defects in the walls and tendered the defense of the defect claims to Reyburn. Stuart Reyburn, owner of Reyburn, would later testify that he received the tender of defense and attempted to contact Plaster's counsel to inquire about the litigation, but Plaster's counsel never responded. In any event, Reyburn did not take over the defense of the action. In March 2002, Plaster brought a third-party complaint against Reyburn and Bill Young's Masonry for indemnity and/or contribution.[4] Plaster also asserted a breach of contract claim against Reyburn for failing to defend, among other things. Reyburn answered, denying any liability.

The homeowners, Plaster, and Reyburn proceeded to trial, which was held in the spring of 2004. The majority of the trial focused on the homeowners' claims: whether the design of the re-

---

[4] Prior to trial, Bill Young's Masonry settled with the homeowners and was removed from the action.

taining walls was adequate, their conformance to the specifications and design, waterproofing and backfilling, and appropriate drainage. In addition, the homeowners complained about the design of the sidewalls, which was so poor, according to them, that one of the sidewalls blew over in the wind.[5] Also during trial, some argument was made and testimony taken pertaining to Plaster's third-party complaint against Reyburn. Plaster argued that Reyburn contributed to the retaining walls' defectiveness by obstructing drainage at the base of the wall when it performed the final grading of the building lot. Stuart conceded in his trial testimony that, as a general rule, a contractor should not cover a wall's drainage system with sand and that, if his employees had covered the drainage openings with sand, it would have been a mistake. However, he also testified that even if sand was deposited over the drainage openings, sand is permeable and would have permitted the water to drain.

Near the end of the trial, Plaster orally moved for judgment as a matter of law against Reyburn on the contractual indemnity and breach of contract causes of action, claiming that Stuart's testimony amounted to a judicial admission of liability. The district court granted the motion after minimal argument by counsel and without the benefit of briefing on the issues. The district court found that Stuart had admitted that placing sand over the drainage openings was within Reyburn's scope of work and that it was a mistake to cover the drainage openings during final grading. The district court then explained that the evidence demonstrated that Plaster was not solely negligent in causing the damages and that the lack of sole negligence triggered the indemnity clause between the parties.

Under the ruling, the district court limited the scope of Reyburn's closing argument, precluded submission of jury instructions or a verdict form, and barred the jury from determining Reyburn's liability, if any. During deliberations, the jury sent a note to the judge asking where they could indicate their conclusions concerning Reyburn's liability, but the judge directed them to fill out the verdict form ''as is.'' The jury ultimately awarded damages to the homeowners, attributing 1-percent fault to the homeowners and 99-percent fault to Plaster.

After the verdict was rendered, all parties filed post-trial motions. Reyburn sought reconsideration of the district court's oral order granting judgment as a matter of law and moved for a new trial. Plaster moved for a determination of damages against Reyburn on its indemnity and breach of contract causes of action, and the homeowners moved for an award of attorney fees, costs, and interest against Plaster. The district court held a hearing on the

---

[5]This wall was replaced by Plaster prior to trial.

motions in August 2004 and made an oral ruling denying Reyburn's motion for a new trial. The district court held a supplemental hearing on the remaining post-trial motions in June 2005, but none of the pending motions were resolved when the trial judge resigned from the district court in December 2006.

As a result of the trial judge's resignation, the case was assigned to Judge David B. Barker in 2007. In December 2008, Reyburn and Plaster renewed their post-trial motions. Judge Barker ultimately resolved the renewed motions in February and April 2009, five years after the conclusion of the trial, denying Reyburn's motion for new trial and finding that Reyburn was required to indemnify Plaster for all of the homeowners' claims. The district court then entered judgment for Plaster and awarded Plaster attorney fees and costs against Reyburn in the sum of $952,813.26, and interest in the amount of $582,264.18, based on Reyburn's failure-to-defend contract claim.

Reyburn now appeals, arguing that the trial judge erred by granting Plaster's motion for judgment as a matter of law on the indemnity and breach of contract claims and that it was error to order Reyburn to pay all of Plaster's attorney fees and costs related to the suit.

## DISCUSSION

In resolving this appeal, we must interpret the indemnity clause in the parties' contract both as to damages and as to the duty to defend. In doing so, we first consider whether Reyburn's negligence alone can trigger Reyburn's duty to indemnify Plaster for liability on the retaining wall and sidewall claims, and then whether the covered liability extends to damages based on Plaster's contributory negligence or merely to damages for Reyburn's negligence. In this, we must consider whether the district court erred when it characterized Stuart's testimony as a judicial admission of liability, triggering the indemnity clause, and, if so, whether a disputed factual issue as to Reyburn's liability remains, such that judgment as a matter of law was precluded. Finally, we address whether Reyburn had a duty to defend under the contract and, if so, whether Reyburn was responsible for the entirety of Plaster's attorney fees and costs.

### Interpretation of the indemnity clause

Typically, "[c]ontractual indemnity is where, pursuant to a contractual provision, two parties agree that one party will reimburse the other party for liability resulting from the former's work." *Medallion Dev. v. Converse Consultants*, 113 Nev. 27, 33, 930 P.2d 115, 119 (1997), *superseded by statute on other grounds as*

*stated in Doctors Company v. Vincent*, 120 Nev. 644, 654, 98 P.3d 681, 688 (2004). When the duty to indemnify arises from contractual language, it generally is not subject to equitable considerations; "rather, it is enforced in accordance with the terms of the contracting parties' agreement." *Prince v. Pacific Gas & Elec. Co.*, 202 P.3d 1115, 1120 (Cal. 2009). And since Nevada has not adopted an anti-indemnity statute,[6] parties have great freedom in allocating indemnification responsibilities between one another. *Id.* The interpretation of an indemnity clause within a contract is a question of law, which this court will review de novo. *Jacobs Constructors v. NPS Energy Services*, 264 F.3d 365, 371 (3d Cir. 2001); *see also Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 215, 163 P.3d 405, 407 (2007).

In our recent decision in *George L. Brown Insurance v. Star Insurance Co.*, 126 Nev. 316, 324, 237 P.3d 92, 97 (2010), we adopted the rule that, while the parties are free to contractually agree to indemnify another for its own negligence, "an express or explicit reference to the indemnitee's own negligence is required." Therefore, " 'contracts purporting to indemnify a party against its own negligence will only be enforced if they clearly express such an intent and a general provision indemnifying the indemnitee "against any and all claims," standing alone, is not sufficient.' " *Id.* (quoting *Camp, Dresser & McKee v. Paul N. Howard*, 853 So. 2d 1072, 1077 (Fla. Dist. Ct. App. 2003) (internal citations omitted)). In adopting this rule, we held that it provides "clarity and fairness to the parties involved" and allows the "wrongdoer [to] face[ ] the consequences of his or her actions rather than" having those consequences fall on an innocent party. *Id.* We repeated our approval of the express negligence doctrine which requires " 'the intent of the parties [to] be specifically stated within the four corners of the contract.' " *Id.* at 324-25, 237 P.3d at 97 (quoting

---

[6]A majority of states have adopted some form of anti-indemnity statutes, "which, in one form or another, restrict, modify, or invalidate indemnification agreements contained in construction contracts." 3 Philip L. Bruner & Patrick J. O'Conner, Jr., *Bruner & O'Conner on Construction Law* § 10:77 (2002). For example, California has adopted legislation that renders an indemnity clause void as against public policy if the agreement provides indemnity for the indemnitee's "sole negligence or willful misconduct." *C.I. Eng. & Const. v. Johnson & Turner Paint*, 189 Cal. Rptr. 824, 827 (Ct. App. 1983) (internal quotations omitted). To avoid invoking an applicable anti-indemnity statute excluding liability based on the indemnitee's sole negligence, many indemnity clauses carve out exceptions for sole negligence and are similarly worded to the indemnity clause in this case. 3 Bruner, *supra*, § 10.76. On the other hand, other states, such as New Mexico, have anti-indemnity legislation that addresses concurrent negligence and prevents an indemnitee from "contract[ing] away liability for his own percentage of negligence." *Guitard v. Gulf Oil Co.*, 670 P.2d 969, 972 (N.M. Ct. App. 1983).

*Lehmann v. Har-Con Corp.*, 76 S.W.3d 555, 560 (Tex. App. 2002)). After strictly construing the indemnity clause in that case, we concluded that the clause was not explicit enough to require the indemnitee to indemnify the indemnitor for its own negligence. *Id.* at 325, 237 P.3d at 97.

Here, Plaster argues that the agreement's scope was intended to indemnify Plaster for its own negligence so long as Plaster was contributively, not solely, negligent. Plaster explains that because the agreement expressly excludes indemnification for its sole negligence, the parties intended that Plaster would be indemnified for its contributory negligence. Therefore, according to Plaster, once it demonstrated that it was not solely negligent in causing the defects, the indemnification agreement was triggered. The district court agreed and determined that Plaster only needed to demonstrate that it was not solely negligent in order to invoke the indemnity clause and thus granted Plaster's motion for judgment as a matter of law. We disagree and conclude that because the indemnity clause is not explicit about whether Reyburn is required to indemnify Plaster even if Reyburn is not negligent, and as to whether the scope of the agreement includes indemnity for Plaster's contributory negligence, the clause necessarily covers only Reyburn's negligence.

According to the indemnity clause at issue here, Plaster must be indemnified for ''any and all'' liabilities that ''aris[e] directly or indirectly out of'' Reyburn's obligations under the subcontract.[7] Consistent with our holding in *Brown*, we determine that this phrasing does not unequivocally condition Reyburn's duty to indemnify Plaster upon anything other than Reyburn's actions, and it does not explicitly state that Reyburn has to indemnify Plaster for Plaster's own negligence. Because the clause at issue here is not explicit, and because we must strictly construe the indemnity clause's language, *id.* at 325, 237 P.3d at 97, we conclude that there must be a showing of negligence on Reyburn's part prior to triggering Reyburn's duty to indemnify Plaster. Otherwise, Reyburn's duty to indemnify could arise from another subcontractor's obligation or scope of work, which should trigger that subcontractor's duty to indemnify, if any, not Reyburn's. Moreover, the indemnity clause does not contain a clear and unequivocal statement of the parties' intent for Reyburn to indemnify Plaster for Plaster's own negligence.[8] Indeed, the clause is notably silent on that subject. Contributory negligence is merely a derivative of negligence, and the distinction between the two forms of negli-

---

[7] Pursuant to the subcontract, Reyburn's only obligation was to complete the rough and finish grading on the lots.

[8] Plaster's negligence is only mentioned in the context of Reyburn not having to indemnify Plaster if Plaster is found to be solely negligent.

gence does not change our holding that indemnification for any form of the indemnitee's own negligence must be explicitly and unequivocally expressed in the contract. Thus, we conclude that because the indemnity clause does not expressly or explicitly state that Reyburn would indemnify Plaster for Plaster's contributory negligence, Reyburn is required to indemnify Plaster only for liability or damages that can be attributed to Reyburn's negligence.

Having determined that not only must Reyburn be partially negligent to trigger the indemnity provision, but also that the indemnity provision covers only Reyburn's negligent acts, we now turn our attention to the district court's conclusion that Reyburn was at least partially negligent when it granted judgment as a matter of law against Reyburn based on its findings that Stuart Reyburn made a judicial admission of liability.[9]

### *Judgment as a matter of law—contractual indemnity*

This court reviews a district court's order granting judgment as a matter of law de novo. *Winchell v. Schiff*, 124 Nev. 938, 947, 193 P.3d 946, 952 (2008). NRCP 50(a)(1) states that a district court may grant judgment as a matter of law if "a party has failed to prove a sufficient issue for the jury." However, "'[i]f there is conflicting evidence on a material issue, or if reasonable persons could draw different inferences from the facts, the question is one of fact for the jury and not one of law for the court.'" *Banks v. Sunrise Hospital*, 120 Nev. 822, 839, 102 P.3d 52, 64 (2004) (alteration in original) (quoting *Broussard v. Hill*, 100 Nev. 325, 327, 682 P.2d 1376, 1377 (1984)).

Toward the end of the trial, Plaster orally moved for judgment as a matter of law against Reyburn on Plaster's contractual indemnity cause of action. After determining that the indemnity clause required Reyburn to indemnify Plaster once Plaster proved that the damages were not the result of Plaster's sole negligence, the district court granted the directed verdict. In reaching its conclusion, the district court considered the testimony elicited from Stuart on cross-examination and determined that it constituted a judicial admission and proved that Reyburn was, at least, partially negligent for the damages and defects alleged by the homeowners. However,

---

[9]Because we remand this case for a new trial, we do not address the extent of Reyburn's indemnification obligation to Plaster for damages, if any, resulting from defective sidewalls or retaining walls. This issue must be resolved by the district court based on the scope of Reyburn's work or the allocation of negligence between the parties. *See generally* 3 Bruner, *supra* note 6, §§ 10:66-10:67 (discussing apportionment of liability between multiple at-fault parties, albeit in the context of indemnification agreements with different triggering language than the one at issue here).

we determine that the district court erred when it construed Stuart's testimony as an admission of liability.

## Judicial admission

As Reyburn's owner, Stuart testified at trial about the work performed by Reyburn under the subcontract. He described the process of final grading and was asked whether he was aware of the drainage system for the retaining walls. Stuart responded that

> there's no specific verbiage in the contract talking about drainage of walls . . . and based on what I've seen now, you know, there was some head joints [(drainage openings) in] some places and none other places.

He was also unsure whether there was some other type of mechanical drainage system in place, therefore, he was uncertain as to the drainage system applied to the retaining walls. Plaster's counsel next asked Stuart about his standard practices when grading:

> Q: Okay. So is it your normal practice on any job to make sure, for instance, if you're going to do grading where you're actually putting dirt against a wall, that you're not covering up whatever drainage scheme is in place?
>
> A: That would be a normal practice.
>
> But what you need to understand is we're not block wall experts. We don't—that's not our—that's not our scope of work. I mean, we are there per contract, and per contract states we want four inches of topsoil over the entire lot.
>
> So the lots are inspected by the city. They're inspected by the supervi[sor]. That's [another contractor's] job. So if there was an issue at hand, you know, with us potentially [blocking] head joints, that would have been an easy fix.
>
> But I think the thing that I need to stress is, is if there was dirt covering a head joint, dirt is not waterproof. I mean, it would still allow for the water to drain because we're just putting in sand. We're not compacting, nothing. We're just laying sand. So if I had any sand over a head joint or partially blocking a head joint, the head joint would still be able to drain.

Stuart also testified that, as a general rule, a subcontractor should not cover drainage openings.

Plaster's counsel then asked Stuart:

> Q.: [I]f you and [Plaster] covered up—you know, raised the dirt in the upper lot above the waterproofing, that would be a mistake, right?

A.: Yes.

Q.: And if you and Plaster raised the dirt up on the lower lot above the weep holes or the open head joints, that would be a mistake, correct?

A.: That's correct.

Stuart then testified that he understood that Reyburn would be responsible to repair any work that was improper, but that he was uncertain about the legal implications of the indemnity clause. He ultimately testified that he understood that Reyburn would defend Plaster so long as Reyburn had proper notice of the defects and was given an opportunity to repair the problems. On cross-examination, Stuart testified that neither he nor Reyburn was ever notified that Reyburn had covered any drainage openings and that they had not received any complaints from Plaster or anyone else concerning Reyburn's work.

"Judicial admissions are defined as deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." *Smith v. Pavlovich*, 914 N.E.2d 1258, 1267 (Ill. App. Ct. 2009). What constitutes a judicial admission should be determined by the circumstances of each case and evaluated in relation to the other testimony presented in order to prevent disposing of a case based on an unintended statement made by a nervous party. *Id.* at 1268. The caselaw cited by Reyburn, which is unchallenged by Plaster, similarly instructs that oral testimony should not be considered a judicial admission but, rather, should be evaluated as evidence and considered in context with any other testimony. *See Scalf v. D.B. Log Homes, Inc.*, 27 Cal. Rptr. 3d 826, 833 (Ct. App. 2005) (reasoning that concessions in pleadings are judicial admissions whereas oral testimony subject to traditional impeachment is construed as evidence); *Conagra, Inc. v. Nierenberg*, 7 P.3d 369, 380 (Mont. 2000) (holding that oral responses to aggressive examination by trained lawyers will not be construed as a judicial admission). In contrast to judicial admissions, there are also evidentiary admissions, which occur when a testifying party "admits a fact which is adverse to his claim or defense." *Keller v. U.S.*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). Evidentiary admissions "may be controverted or explained by the party." *Id.*

Stuart's oral testimony was not a clear, unequivocal statement of liability nor did it admit a fact adverse to Reyburn's claims. Rather, Stuart's testimony was responsive to hypothetical conditions or practices. He did not deliberately, clearly, and unequivocally testify that Reyburn covered any drainage openings or that any damages arose from Reyburn's work. Thus, we conclude that the district

court erred when it construed Stuart's testimony as an admission of liability; Stuart's testimony was neither a judicial or evidentiary admission.

### Conflicting evidence

In addition, a review of the record indicates that there was conflicting evidence regarding Reyburn's negligence. Judgment as a matter of law should not be granted when there is conflicting evidence on material issues. *Banks*, 120 Nev. at 839, 102 P.3d at 64. In addition to the ambiguity of Stuart's testimony, the record demonstrates that Reyburn's work might not have been implicated in the defective retaining walls. Reyburn's expert witness testified that the damage to the walls was not related to Reyburn's work. Plaster's expert witness testified that approximately 93 percent of the homeowners had made improvements to their landscaping, which would also affect the final grading performed by Reyburn and the damage to the retaining walls. Additionally, Plaster's expert concluded that the sand blocking the drainage openings might impede the water from draining, which would result in staining, but it would not result in the structural problems that were part of the damages the homeowners alleged. Because a reasonable jury could draw different inferences from the evidence presented, there remain questions of fact for the jury to decide concerning Reyburn's negligence for the defects alleged. Thus, we conclude that the district court erred in granting Plaster's motion for judgment as a matter of law on the contractual indemnity cause of action.

### Reyburn's duty to defend

The indemnity clause also imposes a duty to defend—"[i]f requested by [Plaster], [Reyburn] will defend any such suits at the sole cost and expense of [Reyburn]." This court has previously addressed an insurer's duty to defend under an insurance policy, but has only generally discussed the duty to defend arising from an indemnity clause. *See Allstate Insurance Co. v. Miller*, 125 Nev. 300, 212 P.3d 318 (2009); *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 120 Nev. 678, 99 P.3d 1153 (2004); *Hughes Properties Inc. v. Plaza Investments*, 103 Nev. 136, 137-38, 734 P.2d 710, 711 (1987) (holding that the duty to defend clause contained within a sublease agreement was not invoked because the plaintiff's complaint did not sufficiently allege that the injuries arose from the subleased property).

An indemnity clause imposing a duty to defend is construed under the same rules that govern other contracts. *Crawford v. Weather Shield Mfg. Inc.*, 187 P.3d 424, 430 (Cal. 2008). How-

ever, "[t]he duty to defend is broader than the duty to indemnify" because it covers not just claims under which the indemnitor is liable, but also claims under which the indemnitor could be found liable. *United Nat'l Ins. Co.*, 120 Nev. at 686, 99 P.3d at 1158.

Plaster argues that Reyburn breached its duty to defend by refusing to defend the allegations that involved Reyburn's scope of work. Plaster relies upon *Crawford* for its contention that Reyburn's duty to defend was triggered by the filing of the homeowners' complaint, regardless of Reyburn's ultimate liability. In *Crawford*, the jury determined that the indemnitor was not negligent and, thus, the trial court determined that the indemnitor was not required to indemnify the indemnitee. 187 P.3d at 428. The trial court, however, concluded that the indemnitor still owed the indemnitee a contractual duty to defend "against the homeowners' claims, insofar as those claims concerned the [indemnitor's scope of work]." *Id.* The trial court then appraised the percentage of the homeowners' claims that invoked the indemnitor's scope of work and apportioned those defense costs to the indemnitor. *Id.* at 429. The California Supreme Court upheld the trial court's decision and determined that the indemnitor was obligated to defend the indemnitee from the outset of any suit that arose from the indemnitor's role in the project. *Id.* at 431. Even if the indemnitor was later determined not to be liable, the duty to defend arose when the claim was made and was independent of the indemnitor's duty to indemnify the indemnitee. *Id.* at 435. The breach of that duty, the California Supreme Court recognized, "may give rise to damages in the form of reimbursement of the defense costs the indemnitee was thereby forced to incur" in defending "against claims encompassed by the indemnity provision." *See id.* at 434, 432.

Similar to *Crawford*, the Indiana Court of Appeals also limited the defense costs under a duty to defend to those costs incurred from defending against the indemnitor's scope of work. *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 760 (Ind. Ct. App. 2002). The indemnitor was not contractually obligated to pay the defense costs associated with the indemnitee's own negligence. *Id.*

Following the standards enunciated in *Crawford* and *Henthorne*, we now hold that unless specifically otherwise stated in the indemnity clause, an indemnitor's duty to defend an indemnitee is limited to those claims directly attributed to the indemnitor's scope of work and does not include defending against claims arising from the negligence of other subcontractors or the indemnitee's own negligence. Accordingly, here we must first determine whether the district court properly granted Plaster's motion for judgment as a matter of law on its breach of contract cause of action before we consider the extent of Reyburn's obligation, if any, to pay for any of Plaster's defense costs.

*Judgment as a matter of law—breach of contract*

The district court, without much explanation, granted Plaster's motion for judgment as a matter of law against Reyburn on its breach of contract cause of action, concluding that Reyburn had breached its duty to defend Plaster. In so doing, the district court relied upon evidence that indicated that Reyburn had received the tender of defense letter from Plaster and did not defend.[10] Stuart testified at trial that, while he did receive Plaster's letter, his calls to Plaster's attorney went unanswered. Ultimately, the district court concluded that Reyburn was responsible for Plaster's defense costs for the entire litigation, presumably because it concluded that the contract required Reyburn to indemnify Plaster for all negligence except for Plaster's sole negligence.

To invoke the duty to defend, the plaintiffs' complaint must have sufficiently alleged negligence on the part of Reyburn, or their claims must have concerned Reyburn's scope of work for the project. *See Hughes Properties Inc.*, 103 Nev. at 137-38, 734 P.2d at 711; *Crawford*, 187 P.3d at 442. Here, the homeowners' complaint concerned the design and construction of the retaining walls and sidewalls. Reyburn's scope of work was to complete the rough and final grading of the homes and did not include the design, construction, or development of the retaining walls or sidewalls. Given the conflicting evidence at trial as to whether Reyburn's work was implicated in the defective retaining walls and sidewalls, and viewing the evidence and inferences in Reyburn's favor, we conclude that a reasonable jury could have granted relief in favor of Reyburn. *See Winchell v. Schiff*, 124 Nev. 938, 946-47, 193 P.3d 946, 951-52 (2008). Thus, we conclude that the district court erred in granting Plaster's motion for judgment as a matter of law on the breach of contract cause of action. *See id.* at 947, 193 P.3d at 952 (an order granting judgment as a matter of law is reviewed de novo).

*Defense costs*

After the conclusion of trial, Plaster moved for a determination of damages against Reyburn. Approximately five years elapsed between the filing of post-trial motions and the district court's award of attorney fees and costs to Plaster. During that time, the

---

[10]Plaster did not send the letter tendering its defense to Reyburn until November 2001, 18 months after the initiation of litigation. Although the 18-month delay in receiving notice of its duty to defend was likely prejudicial, Reyburn again failed to raise this issue in the district court, so we do not consider it on appeal. *See Albios v. Horizon Communities, Inc.*, 122 Nev. 409, 420 n.14, 132 P.3d 1022, 1029 n.14 (2006).

trial judge resigned from the district court and a new judge was assigned to the case. The new judge conducted numerous hearings on new post-trial motions and ultimately entered judgment against Reyburn and ordered it to indemnify Plaster for any award against Plaster and in favor of the homeowners; ordered Reyburn to pay all of Plaster's attorney fees and costs totaling $952,813.26; and ordered Reyburn to pay $582,264.18 in interest that accumulated from the conclusion of trial in 2004, until the post-trial motions were decided in 2009.

Because we hold that an indemnitor's duty to defend an indemnitee is generally limited to those claims directly attributed to the indemnitor's scope of work and does not include defending against the negligence of other subcontractors or the indemnitee's own negligence, *see Crawford*, 187 P.3d at 429; *Henthorne*, 764 N.E.2d at 760, we conclude that the district court erred in awarding Plaster its total amount of attorney fees and costs without first apportioning those fees and costs actually incurred by Plaster in defending against those claims directly attributed to Reyburn's scope of work, if any.[11]

## CONCLUSION

We conclude that the indemnity clause in this case does not unequivocally or explicitly state that Reyburn would be required to indemnify Plaster, even if Reyburn was not negligent, and does not clearly require indemnification for Plaster's contributory negligence. Therefore, the indemnity clause must be interpreted against Plaster, meaning that Plaster must prove negligence on the part of Reyburn before the clause is triggered and that Plaster may be in-

---

[11]Reyburn also argues that Plaster should be precluded from seeking attorney fees through a post-trial motion because attorney fees arising from a breach of contract must be proved as special damages at trial. In *Sandy Valley Associates v. Sky Ranch Estates*, we distinguished between attorney fees as a cost of litigation and as special damages. 117 Nev. 948, 955-60, 35 P.3d 964, 968-71 (2001), *receded from on other grounds as stated in Horgan v. Felton*, 123 Nev. 577, 579, 170 P.3d 982, 983 (2007). Attorney fees that are a cost of litigation arise from an agreement, statute, or rule authorizing the fees, whereas attorney fees that are considered special damages are fees that are foreseeable arising from the breach of contract or tortious conduct. *Id.* at 956, 35 P.3d at 969. In *Shuette v. Beazer Homes Holdings Corp.*, we supplemented *Sandy Valley* by explaining that fees as special damages "constitute a rather narrow exception to the rule prohibiting attorney fees awards absent express authorization." 121 Nev. 837, 862, 124 P.3d 530, 547 (2005).

Because the indemnity clause in this case expressly authorizes attorney fees, regardless of whether the attorney fees could have been awarded as damages for breach of the contractual duty to defend, they were also directly authorized by the contract as a cost of litigation and can be considered in a post-trial motion. However, as discussed above, any award of attorney fees to Plaster and against Reyburn must be limited to Plaster's fees incurred defending against the causes of action specifically concerning Reyburn's scope of work or involvement in the project.

demnified only for damages associated with Reyburn's negligence. Additionally, because Stuart Reyburn's oral testimony was not a clear statement of liability but, rather, merely responded to a hypothetical line of questioning, we conclude that the district court erred in finding that Stuart's testimony was a judicial admission of liability. Moreover, there was conflicting evidence in the record regarding whether Reyburn's work was implicated in the defective retaining walls. Thus, we determine that the evidence as a whole presented sufficient issues of fact for a jury to decide. Accordingly, we conclude that the district court erred in granting judgment as a matter of law on Plaster's contractual indemnity cause of action.

Because Reyburn's duty to defend Plaster is limited to those claims directly attributed to Reyburn's scope of work and does not include defending against the negligence of other subcontractors or Plaster's own negligence, we conclude that whether the homeowners' complaint sufficiently alleged negligence on the part of Reyburn, triggering its duty to defend, was also a material issue of fact for the jury to decide. Thus, we conclude that the district court erred in granting judgment as a matter of law on Plaster's breach of contract cause of action as well.

Finally, if the jury determines that the homeowners sufficiently alleged claims involving Reyburn's scope of work, we conclude that the district court must apportion an award of fees and costs between those actually incurred by Plaster in defending against those claims directly attributable to Reyburn's scope of work and those incurred in defending its own negligence.

Accordingly, we reverse the judgment of the district court and remand this matter for a new trial on Plaster's indemnity and breach-of-contract-for-failing-to-defend claims against Reyburn.

DOUGLAS, C.J., concurs.

PICKERING, J., concurring:

I submit that the express negligence rule has less utility than the rule suggested in the Restatement (Third) of Torts: Apportionment of Liability § 22 cmt. f (2000), which holds that "An indemnitee can recover contractual indemnity for his or her own legally culpable conduct only if the contract is clear on that point," but recognizes that, "[i]f the contract is otherwise clear, it need not contain specific words, such as 'negligence' or 'fault.'" *See George L. Brown Ins. v. Star Ins. Co.*, 126 Nev. 316, 326-27, 237 P.3d 92, 98-99 (2010) (PICKERING, J., concurring). The Restatement's broader formulation does a better job of capturing the core question: Is the reading of the indemnity clause contended for reasonable in light of the words the parties used and the circum-

stances under which they contracted? *Id.* at 326, 237 P.3d at 98 (quoting 5 Margaret N. Kniffin, *Corbin on Contracts* § 24.22, at 240 (1998) (noting "preference for an interpretation that will result in contract terms that are reasonable")). Although I write separately as to the express negligence rule, I otherwise join the majority's opinion.