**137 Nev., Advance Opinion 7**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JASON T. SMITH, AN INDIVIDUAL, Appellant, vs. KATY ZILVERBERG, AN INDIVIDUAL; AND VICTORIA EAGAN, AN INDIVIDUAL, Respondents. | No. 80154 |
| JASON T. SMITH, AN INDIVIDUAL, Appellant, vs. KATY ZILVERBERG, AN INDIVIDUAL; AND VICTORIA EAGAN, AN INDIVIDUAL, Respondents. | No. 80348 FILED MAR 04 2021 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Consolidated appeals from district court orders granting an anti-SLAPP special motion to dismiss and awarding attorney fees, costs, and statutory damages. Eighth Judicial District Court, Clark County; James Crockett, Judge.

*Affirmed.*

Flangas Dalacas Law Group, Inc., and Gus W. Flangas and Kimberly P. Stein, Las Vegas,
for Appellant.

McLetchie Law and Margaret A. McLetchie, Alina M. Shell, and Leo S. Wolpert, Las Vegas,
for Respondents.

21-06305

BEFORE HARDESTY, C.J., PARRAGUIRRE and CADISH, JJ.

*OPINION*

By the Court, CADISH, J.:

These appeals present issues concerning the scope of Nevada's anti-SLAPP statutory protections. As to the merits, appellant Jason Smith challenges the district court's finding that these provisions shield respondents Katy Zilverberg and Victoria Eagan against liability for allegedly defamatory statements they made about him on social media platforms. In addition, Smith contests the district court's conclusion that Zilverberg and Eagan are entitled to the attorney fees and costs they incurred from the beginning of the proceedings, not just those incurred in bringing their anti-SLAPP special motion to dismiss. Smith further challenges the district court's determination that Zilverberg and Eagan are entitled to an additional discretionary award of $10,000 each under Nevada's anti-SLAPP provisions.

We hold that the district court properly applied NRS 41.637(4) and the factors outlined in *Shapiro v. Welt*, 133 Nev. 35, 389 P.3d 262 (2017), in determining that Zilverberg and Eagan's statements were made in good faith and addressed an issue of public concern, and thus warranted protection under the first prong of the anti-SLAPP statutes. The district court also correctly determined that Smith failed to make a prima facie showing of actual malice as required to satisfy the second prong of the analysis and thus appropriately granted the anti-SLAPP motion to dismiss. We further hold that the district court did not err in awarding attorney fees and costs because, under NRS 41.670(1)(a), if the court grants an anti-SLAPP special motion to dismiss, a prevailing defendant may recover

attorney fees and costs incurred from the inception of the proceedings. Finally, we hold that the district court did not err in awarding Zilverberg and Eagan each an additional $10,000 because NRS 41.670(1)(b) authorizes an award of up to an additional $10,000 to each individual defendant who prevails on an anti-SLAPP special motion to dismiss. Thus, we affirm the district court's orders.

## FACTS AND PROCEDURAL HISTORY

Smith is a professional thrifter who tours the United States teaching others how to thrift, i.e., buy items from thrift and antique stores and then resell those items through online marketplaces. He currently hosts two YouTube shows related to thrifting and previously starred in a Spike TV show. He has guest starred on *Pawn Stars* and has a business relationship with eBay and WorthPoint, two of the largest resources for finding, valuing, and pricing antiques and collectibles. He operates a Facebook group—The Thrifting Board—where he assists individuals in learning how to thrift.

Zilverberg and Eagan are thrifters who had both friendship and professional relationships with Smith through the thrifting community, before having a falling out. Zilverberg and Eagan operate a YouTube channel and have their own personal Facebook pages. Zilverberg, a former administrator of Smith's Facebook group, posted a YouTube video where she (1) criticized Smith for bullying behavior, (2) alleged that Smith retaliated against members of the thrifting community by releasing their personal information online or attempting to bar those individuals from thrifting events, and (3) implied that his behavior caused members of the thrifting community to contemplate self-harm. Eagan posted a statement on her personal Facebook page (1) criticizing Smith for what she considered

misogynistic and bullying behavior and (2) stating that other individuals have sought restraining orders to stop Smith's behavior.

Smith filed a complaint alleging that Zilverberg's and Eagan's statements were false and defamatory. He brought claims for defamation per se, conspiracy, and injunctive relief. Zilverberg and Eagan filed an anti-SLAPP special motion to dismiss, which the district court granted, concluding that they met their burden under the first prong of the anti-SLAPP framework. The court further concluded that Smith did not satisfy his burden under the second prong of the anti-SLAPP framework to demonstrate a probability of prevailing on his claims with prima facie evidence that Zilverberg and Eagan knowingly made any false statements.

Zilverberg and Eagan timely moved for attorney fees and costs under NRS 41.670(1)(a) for prevailing on their anti-SLAPP motion to dismiss, as well as an additional discretionary statutory award of $10,000 each under NRS 41.670(1)(b). The district court granted the motion, awarding Zilverberg and Eagan the attorney fees and costs they incurred from the inception of the proceedings and additional discretionary awards of $10,000 each. On appeal, Smith challenges the dismissal order and the order awarding fees, costs, and statutory damages.

## DISCUSSION

*The district court correctly granted the anti-SLAPP special motion to dismiss*

We review a decision to grant or deny an anti-SLAPP special motion to dismiss de novo. *Rosen v. Tarkanian*, 135 Nev. 436, 438, 453 P.3d 1220, 1222 (2019).

*Zilverberg's and Eagan's statements were made in good faith and in direct connection with a matter of public interest*

Smith argues that Zilverberg's and Eagan's statements were not made in good faith and in direct connection with a matter of public interest as defined under NRS 41.637(4) and that the district court improperly applied the *Shapiro* factors in concluding otherwise. Smith asserts the statements are not entitled to protection under Nevada's anti-SLAPP statutes because they do not relate to the thrifting community, are the result of a private vendetta, and were an attempt to gather ammunition for another round of private controversy. We disagree.[1]

A court must grant an anti-SLAPP special motion to dismiss where (1) the defendant shows, by a preponderance of the evidence, that the claim is based on a "good faith communication in furtherance of . . . the right to free speech in direct connection with an issue of public concern" and (2) the plaintiff fails to show, with prima facie evidence, a probability of prevailing on the claim. NRS 41.660(3)(a)-(b). To satisfy the first prong, the defendant must show that (1) "the comments at issue fall into one of the four categories of protected communications enumerated in NRS 41.637" and (2) "the communication 'is truthful or is made without knowledge of its falsehood.'" *Stark v. Lackey*, 136 Nev. 38, 40, 458 P.3d 342, 345 (2020) (quoting NRS 41.637).

We define an issue of public concern broadly, *see Coker v. Sassone*, 135 Nev. 8, 14, 432 P.3d 746, 751 (2019), and previously adopted

---

[1]The parties do not dispute that the statements at issue were made in a public forum—Facebook and YouTube. Accordingly, we only address whether the statements relate to a public interest and whether they were made in good faith.

the following guiding principles for district courts to use in distinguishing issues of private and public interest:

> "(1) 'public interest' does not equate with mere curiosity;
>
> (2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;
>
> (3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;
>
> (4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and
>
> (5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people."

*Shapiro*, 133 Nev. at 39, 389 P.3d at 268 (quoting *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013)).

Relying on California caselaw, Zilverberg and Eagan argue that statements about a public figure are per se statements related to an issue of public concern. However, while the public might have a heightened interest in Smith given his status as a public figure, statements about a public figure may still concern matters that are private under the *Shapiro* factors. Accordingly, we reject the notion that statements regarding public figures necessarily relate to a public interest. Instead, we reiterate that district courts must apply the *Shapiro* factors to determine whether statements relate to a public interest even if the statements concern a public figure.

Applying the *Shapiro* analysis, we conclude that Zilverberg's and Eagan's statements relate to a public interest. In particular, we hold that consumers' interest in Smith's alleged behavior surpasses mere curiosity and is a matter of concern to a substantial number of people. This is especially apparent given Smith's status in the community, which includes a business where he teaches individuals how to thrift successfully. *See Abrams v. Sanson*, 136 Nev. 83, 87-88, 458 P.3d 1062, 1066-67 (2020) (holding that the public has an interest beyond a mere curiosity in an attorney's courtroom behavior because it serves as a warning to any potential, or current, client looking to hire that lawyer). As Smith conceded, he is a public figure of widespread fame in the thrifting community, and his reputation is important to those who choose to seek his guidance and do business with him. Accordingly, disclosure of Smith's behavior, which occurred in connection with his thrifting business and related activities, informs the public's decision on whether to do business with him. Moreover, the record shows that the thrifting community is extensive and includes parties around the world, such that statements about Smith's behavior are of concern to a substantial number of people.[2]

While Smith provided a declaration stating that Zilverberg's and Eagan's actions arose from "animosity and personal spite," it contained conclusory statements that were not based on first-hand factual information. *See* NRS 50.025(1)(a) ("A witness may not testify to a matter unless . . . [e]vidence is introduced sufficient to support a finding that he has personal knowledge of the matter."). Moreover, Zilverberg's and Eagan's statements concern Smith's actions regarding others in the

---

[2]As a case in point, Smith's closed Facebook group, The Thrifting Board, has over 55,000 members.

thrifting community, not simply their personal conflicts with him. In sum, Zilverberg's and Eagan's statements concern Smith's character as a leading figure in the thrifting community and are of interest to a broad swath of the public. Thus, the district court correctly determined that their statements directly relate to a public interest under the *Shapiro* factors.[3]

*Zilverberg's and Eagan's statements were truthful or made without knowledge of falsehood, or were opinions incapable of being false*

Smith next argues that the district court erred by concluding that Zilverberg's and Eagan's statements were made in good faith or were opinions because they knew their statements were false and failed to provide any substantive evidence to show the statements were true.

A statement is made in good faith if it is either "truthful or is made without knowledge of its falsehood." NRS 41.637(4). We do not parse the individual words to determine the truthfulness of a statement; rather, we ask "whether a preponderance of the evidence demonstrates that the gist of the story, or the portion of the story that carries the sting of the [statement], is true." *Rosen*, 135 Nev. at 441, 453 P.3d at 1224 (alteration in original) (internal quotation marks omitted). Additionally, statements of opinion cannot be false. *See Abrams*, 136 Nev. at 89-90, 458 P.3d at 1068-69.

---

[3]Smith argues that the speech at issue relates to an interest of a private community and that such speech must encourage participation in matters of public significance to be protected. However, he raises this argument for the first time in his reply brief. Thus, it is waived. *Khoury v. Seastrand*, 132 Nev. 520, 530 n.2, 377 P.3d 81, 88 n.2 (2016) (stating that arguments raised for the first time in a reply brief are waived).

The record shows that Zilverberg's statements criticizing Smith for bullying or retaliatory behavior, and outlining what she perceived to be the consequences of such behavior, were either truthful or made without knowledge of falsity. Zilverberg supported those statements with a declaration and other admissible evidence demonstrating her good-faith basis for making the statements. Such evidence included screenshots of a Facebook post where Smith published the personal information of an anonymous critic, a YouTube video where Smith exposed the anonymous critic's identity and hometown, screenshots of a Facebook conversation where Smith bragged about convincing the organizers of a major thrifting event to remove a target of Smith's displeasure as a speaker, and screenshots of a Facebook chat where Smith claimed he was arrested twice and committed felonies. Zilverberg's declaration, coupled with this evidence, shows that the gist of her statements was either true or made without knowledge of falsity. Moreover, Zilverberg's characterization of Smith's behavior as "bullying" is an opinion incapable of being false. *See Lubin v. Kunin*, 117 Nev. 107, 112, 17 P.3d 422, 426 (2001) (holding that statements that convey "the publisher's judgment as to the quality of another's behavior" are evaluative opinions).

Similarly, Eagan's statement characterizing Smith's behavior as misogynistic bullying is an opinion incapable of being false. *See id.* Moreover, the record shows that her statements about Smith's harassing behavior were based on her personal knowledge and were truthful or at least made without knowledge of falsity. The record likewise shows that Eagan's statements about Smith being the subject of restraining orders were based on her personal knowledge and were either truthful or at least

made without knowledge of falsity.[4] Accordingly, we conclude that the district court correctly determined that Zilverberg and Eagan met their burden under the first prong of the anti-SLAPP analysis.

*Smith failed to show with prima facie evidence a probability of prevailing on his claims*

Next, Smith argues that the district court erred in concluding that he failed to provide prima facie evidence of actual malice because he provided evidence that Zilverberg and Eagan made their statements with reckless disregard for the truth.

To satisfy the second prong of the anti-SLAPP analysis, the plaintiff must show, by prima facie evidence, that his claims have minimal merit. *See* NRS 41.660(3)(b); *Abrams*, 136 Nev. at 91, 458 P.3d at 1069. In addressing the second prong, we review each claim and assess the plaintiff's probability of prevailing.[5] *Abrams*, 136 Nev. at 91, 458 P.3d at 1069. The probability of prevailing is determined by comparing the evidence presented with the elements of the claim. *See id.* at 91-92. 458 P.3d at 1069-70.

_____

[4]On appeal, Smith argues that Eagan defamed him by alleging he had a criminal history. Although the parties dispute whether Eagan said that Smith was the subject of restraining orders or that he had a criminal history, the record shows that Eagan merely alleged that Smith was the subject of restraining orders. Her declaration explained the basis of her belief that these statements were true—conversations with trusted individuals who informed her of Smith's alleged past restraining orders. Smith failed to provide any admissible evidence contradicting Eagan's declaration.

[5]Smith does not challenge the district court's dismissal of his conspiracy claim or his request for injunctive relief. Accordingly, we limit our consideration to his defamation claim.

To prevail on a defamation claim, the plaintiff must show (1) a false and defamatory statement; (2) unprivileged publication to a third person; (3) fault; (4) damages, presumed or actual; and, when the plaintiff is a public figure, (5) actual malice.[6] *Rosen*, 135 Nev. at 442, 453 P.3d at 1225. Actual malice in this context means "knowledge that it [the statement] was false or [made] with reckless disregard of whether it was false or not." *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 719, 57 P.3d 82, 90 (2002) (first alteration in original) (internal quotation marks omitted).

Here, we conclude that the statements at issue were not actionable because Smith failed to provide evidence of actual malice and the statements were opinions or Zilverberg and Eagan had an adequate factual basis for making them. The evidence Smith provided—his declaration—is insufficient to satisfy the actual malice standard because, in it, he merely asserted his subjective belief that Zilverberg's and Eagan's personal animosity toward him was the reason for the publication of the allegedly defamatory statements. However, such personal animosity, even if demonstrated, does not address the showing required for actual malice, as Smith did not attest to any facts tending to show that Zilverberg and Eagan knowingly or recklessly made false statements. Further, as discussed above, Zilverberg and Eagan provided declarations and other evidence that

---

[6]In his complaint, Smith acknowledged his status as a public figure in the thrifting community and general public. Under the doctrine of judicial admissions, he is bound to that statement. *See Reyburn Lawn & Landscape Designers, Inc. v. Plaster Dev. Co., Inc.*, 127 Nev. 331, 343, 255 P.3d 268, 276 (2011) ("Judicial admissions are defined as deliberate, clear, and unequivocal statements by a party about a concrete fact within that party's knowledge.").

support their claim that they believed the statements to be true at the time they made them or the statements were in the nature of opinions. Thus, because Smith failed to provide evidence making a prima facie showing that Zilverberg's and Eagan's statements were actionable, he failed to meet his burden under the second prong of the anti-SLAPP analysis. Accordingly, we conclude that the district court properly granted Zilverberg and Eagan's special motion to dismiss.[7]

*The district court acted within its sound discretion by awarding respondents attorney fees and costs*

We generally review a district court's decision to grant attorney fees and costs for an abuse of discretion. *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 82, 319 P.3d 606, 616 (2014). However, if the decision implicates a question of law, including matters of statutory interpretation, we review the ruling de novo. *See id.*

Smith contends that the district court erred in concluding that Zilverberg and Eagan are entitled, under NRS 41.670(1)(a), to all reasonable attorney fees and costs they incurred from the inception of the litigation rather than only those attorney fees and costs related to their anti-SLAPP motion. In addition, Smith argues that the amount of the attorney fees and costs the district court awarded was unreasonable under the factors set forth in *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969).

---

[7]Smith argues that the district court failed to consider his affidavit when it analyzed the second prong. Thus, Smith argues, this court should remand for the district court to reconsider the second prong if we conclude that Zilverberg and Eagan met their burden under the first prong. However, the record shows that the district court *did* consider Smith's affidavit and determined that it was insufficient. We agree with this determination, and therefore, remand is not necessary.

When interpreting a statute, we look to its plain language. *Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 370, 252 P.3d 206, 209 (2011). If a statute's language is plain and unambiguous, we enforce the statute as written, without resorting to the rules of construction. *Local Gov't Emp.-Mgmt. Relations Bd. v. Educ. Support Emps. Ass'n*, 134 Nev. 716, 718, 429 P.3d 658, 661 (2018). If a statute's language is ambiguous, we will examine the provision's legislative history and the scheme as a whole to ascertain the Legislature's intent. *See We the People Nev. v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1171 (2008). "Statutory language is ambiguous if it is capable of more than one reasonable interpretation." *In re Candelaria*, 126 Nev. 408, 411, 245 P.3d 518, 520 (2010).

The statute at issue here, NRS 41.670(1)(a), states that "[i]f the court grants a special motion to dismiss filed pursuant to NRS 41.660 . . . [t]he court shall award reasonable costs and attorney's fees to the person against whom the action was brought." The statute does not specify if the costs and fees to be awarded are those incurred litigating the entire action or only the costs and fees incurred litigating the anti-SLAPP motion. Because NRS 41.670(1)(a) is ambiguous on this point, we turn to the rules of statutory construction to determine the Legislature's intent.

"One basic tenet of statutory construction dictates that, if the legislature includes a qualification in one statute but omits the qualification in another similar statute, it should be inferred that the omission was intentional." *In re Christensen*, 122 Nev. 1309, 1323, 149 P.3d 40, 49 (2006). Comparing NRS 41.670(1)(a) to NRS 41.670(2) is instructive here. NRS 41.670(2) provides that, when a special motion to dismiss is denied, the prevailing plaintiff can recover "reasonable costs and attorney's fees incurred in responding to the motion." In contrast, NRS 41.670(1)(a)

SUPREME COURT
OF
NEVADA

(O) 1947A

13

contains no similar qualification limiting the period for which prevailing defendants can recover attorney fees and costs. Because these are not simply similar attorney fees provisions, but are part of the same statutory scheme, the omission of any such qualification in NRS 41.670(1)(a) is particularly illuminating. Consequently, we conclude that the Legislature intended for prevailing defendants to recover reasonable attorney fees and costs incurred from the inception of the litigation, rather than just those incurred in litigating the anti-SLAPP motion.

The purpose of Nevada's anti-SLAPP statutes supports such an interpretation. As we have observed, the Legislature enacted these provisions in 1993 to filter out "unmeritorious claims in an effort to protect citizens from costly retaliatory lawsuits arising from their right to free speech under both the Nevada and Federal Constitutions." *John v. Douglas Cty. Sch. Dist.*, 125 Nev. 746, 755, 219 P.3d 1276, 1282 (2009), *superseded by statute on other grounds as stated in Shapiro*, 133 Nev. at 37, 389 P.3d at 266. When the Legislature amended the statute in 1997, it reiterated that the intent of Nevada's anti-SLAPP statutes is to protect citizens' First Amendment right to free speech by limiting the chilling effect of civil actions filed against valid exercises of that right. 1997 Nev. Stat., ch. 387, preamble, at 1363-64.

To further these important purposes, the anti-SLAPP statutes provide immunity from civil liability for claims against protected speech. NRS 41.650 (providing that "[a] person who engages in a good faith communication in furtherance of the right . . . to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication"). Thus, consistent with the Legislature's goals of preventing the chilling effect of SLAPP suits and

Supreme Court
OF
Nevada

(O) 1947A

14

protecting free speech, we conclude that it intended to permit a prevailing defendant to recover all reasonable fees and costs incurred from the inception of the litigation under NRS 41.670(1)(a). Accordingly, the district court did not abuse its discretion by awarding Zilverberg and Eagan attorney fees and costs incurred for the entire action.[8]

Further, the district court acted within its sound discretion in awarding $2,387.53 in costs and $66,615.00 in attorney fees. In determining the amount of fees to award, the district court can follow any rational method so long as it applies the *Brunzell* factors. *Logan v. Abe*, 131 Nev. 260, 266, 350 P.3d 1139, 1143 (2015). Under *Brunzell*, a district court must consider the following factors when awarding attorney fees: (1) the qualities of the attorney, (2) the character of the work done, (3) the actual work performed by the attorney, and (4) the result achieved. 85 Nev. at 349, 455 P.2d at 33. So long as the district court considers the *Brunzell* factors, "its award of attorney fees will be upheld if it is supported by substantial evidence." *Logan*, 131 Nev. at 266-67, 350 P.3d at 1143.

Here, the district court considered each of the *Brunzell* factors and the documentation provided in support of the attorney fees in finding

---

[8]Smith relies on *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 46 Cal. Rptr. 2d 542 (Ct. App. 1995), to argue that respondents can recover attorney fees related only to the anti-SLAPP motion, not the entire action. However, while the California statutory language is similar to ours, *Lafayette Morehouse* largely based its holding on California's legislative history. *Id.* at 544. Nevada has no similar express legislative statement limiting the fees a prevailing defendant can recover. Accordingly, we decline to follow *Lafayette Morehouse*.

them reasonable.[9]  While Smith challenges the time spent on the anti-SLAPP motion to dismiss as excessive in light of Zilverberg and Eagan's counsel's expertise in First Amendment litigation, the billing logs in the record show that their lead counsel delegated much of the work to other qualified attorneys who billed at a lower rate and support the district court's finding that the time spent and fees incurred were reasonable.  Further, Zilverberg and Eagan's counsel achieved a complete dismissal, which favors awarding attorney fees.  Accordingly, the district court acted within its sound discretion in awarding Zilverberg and Eagan their attorney fees and costs.[10]

*The district court acted within its sound discretion by awarding Zilverberg and Eagan each statutory damages*

Finally, Smith argues that the district court erred by awarding Zilverberg and Eagan an additional $10,000 each under NRS 41.670(1)(b). He argues that, because he brought the action against Zilverberg and Eagan collectively and they lodged a joint defense through the same law firm, they can only be awarded a total of $10,000 under NRS 41.670(1)(b).[11]  We disagree.

---

[9]The district court considered billing logs for the work performed, as well as declarations supporting the reasonableness of the rates and the work performed.

[10]Smith does not challenge the reasonableness of the portion of the fees the district court awarded for the work of Zilverberg and Eagan's prior counsel that was unrelated to the anti-SLAPP special motion to dismiss. Instead, he merely argues that they could not recover those fees because they were not related to the anti-SLAPP motion.  Thus, we affirm the district court's order awarding fees and costs in its entirety.

[11]Smith also argues that the statutory language implies that a district court may grant a $10,000 award only when frivolous or vexatious conduct

Supreme Court
OF
Nevada

(O) 1947A

16

The plain language of NRS 41.670 does not limit the statutory award to $10,000 per lawsuit. Instead, NRS 41.670(1)(b) states that "[t]he court may award, in addition to reasonable costs and attorney's fees awarded pursuant to paragraph (a), an amount of up to $10,000 to the *person* against whom the action was brought." (Emphasis added.) "Person" is defined as "[a] human being" or "[a]n entity (such as a corporation) that is recognized by law as having most of the rights and duties of a human being." *Person, Black's Law Dictionary* (11th ed. 2019). Thus, the plain language of the statute allows the district court to award up to $10,000 to any individual against whom the action was brought. Further, Zilverberg and Eagan's joint representation is irrelevant to their entitlement to additional awards under NRS 41.670(1)(b) because NRS 41.670(1)(b) is not an attorney fees award. NRS 41.670(1)(b) (providing that a district court may award up to $10,000 "*in addition* to reasonable costs and attorney's fees" (emphasis added)). Accordingly, the district court acted within its sound discretion by awarding each $10,000 in statutory damages.

## CONCLUSION

We conclude that the district court correctly determined that the Zilverberg's and Eagan's statements fall within the protections of Nevada's anti-SLAPP statutes and that Smith did not demonstrate with prima facie evidence a probability of prevailing on his claims. We further hold that NRS 41.670(1)(a) allows a prevailing defendant to recover reasonable attorney fees and costs incurred in the entire action, not just those incurred litigating the anti-SLAPP special motion to dismiss. As the

---

warrants a punitive award. However, Smith first raises this argument in his reply brief. Accordingly, it is waived. *Khoury*, 132 Nev. at 530 n.2, 377 P.3d at 88 n.2.

district court properly considered the *Brunzell* factors and substantial evidence supports its findings, we conclude that the district court did not abuse its discretion by awarding attorney fees and costs for the entire action. Finally, we hold that NRS 41.670(1)(b) gives district courts the discretion to award up to an additional $10,000 to each individual defendant. Thus, the district court did not abuse its discretion by awarding Zilverberg and Eagan an additional $10,000 each under this statute. Accordingly, we affirm the district court's orders.

_____, J.
Cadish

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A