OPINION
By the Court,
Douglas, J.:
In this appeal and cross-appeal, we primarily consider whether actual losses resulting from the conversion of inventory include the value of a lost business. We conclude that full recovery for actual losses includes not only the converted inventory, but also resulting damages such as the value of a lost business.

FACTS

Appellant/cross-respondent Calvin Winchell, d/b/a CGL Seafood, Inc., owned and operated a wholesale fresh fish business in Las Vegas, Nevada. Winchell’s business grew from $36,780 in sales in 1996 to $759,711 in 2000. With such dramatic growth, *942 Winchell was in need of a much larger storage facility for his inventory.
Respondent/cross-appellant Renate Schiff, Trustee of Schiff Properties, owned a cold storage facility and offered to lease a portion of that space to Winchell. Winchell accepted her offer, and the parties executed a two-year lease agreement that expired in December 2000. Under the terms of the agreement, Winchell was required to indemnify Schiff and maintain insurance for the mutual benefit of Schiff and Winchell. Additionally, the agreement provided that Schiff and her agents were permitted to enter the storage space at any reasonable time for inspection or maintenance purposes.
A few months before the lease was set to expire, on August 21, 2000, while Winchell was out of town, Schiff s property manager, Beryl Duncan, became concerned that Winchell may have abandoned the premises. Having had prior experience with tenants abandoning cold storage units, turning the power off, and leaving unrefrigerated fish behind, Duncan was apparently concerned about whether the electricity had been shut off. Accordingly, Duncan attempted to contact Winchell by telephone, to no avail.
Duncan subsequently determined that it was necessary to inspect the storage unit. To gain access into the unit, Duncan hired a locksmith and directed him to drill out and replace the locks. As the locksmith pried the door to the storage unit open, the security alarm was triggered. Duncan immediately directed the locksmith to cut the wires and disable the alarm. Despite the locksmith having cut the wires, the system was still able to accurately record subsequent unauthorized entries because the locksmith had only disabled the audible portion of the alarm. Once inside the storage unit, Duncan conducted a preliminary inspection and verified that the electricity was on. According to one of Schiff s representatives, the storage unit was full of inventory. Following the inspection, the locksmith secured the storage unit and provided Duncan with the new set of keys.
Winchell returned to Las Vegas on August 23, 2000. Upon arriving at the storage unit, Winchell quickly discovered that the locks had been changed. Winchell immediately called Schiff and the police. Shortly thereafter, Schiff s representatives and the police arrived at the storage unit. Upon entering, Winchell noticed that somewhere between $30,000 and $45,000 worth of inventory had been removed. A review of the alarm records revealed that an unaccounted for entry was made on the morning of August 23, 2000. Winchell filed a claim under his insurance policy and received $33,084 in compensation for the lost inventory.
According to Winchell, this disruption in Winchell’s supply led to the demise of his business in October 2000, approximately two *943 months prior to the expiration of the lease agreement. Accordingly, Winchell discontinued paying rent, removed the remaining inventory, and vacated the storage unit. Subsequently, Winchell filed suit against Schiff. The complaint included causes of action for conversion, breach of quiet enjoyment, breach of contract, and trespass, and he sought compensatory and punitive damages. Schiffis answer to the complaint included a counterclaim for breach of contract based on Winchell’s early termination of the lease agreement.
Prior to trial, the district court granted Winchell’s motion in limine to exclude information relating to collateral sources of payment, such as insurance proceeds. At the conclusion of Winchell’s case in chief, Schiff moved in open court for judgment as a matter of law pursuant to NRCP 50 on each of Winchell’s causes of action. The district court granted the motion in part and dismissed the claims for breach of quiet enjoyment, breach of contract, and trespass, as well as the request for punitive damages.[1] Consequently, only Winchell’s conversion claim and Schiff’s breach of contract claim remained.
As to conversion, Winchell argued that he was entitled to full compensation for his actual losses, including an award of damages equal to the amount of his converted inventory and lost business. The jury responded with an award of $210,000 in actual damages. The jury also awarded Schiff $2,880 for Winchell’s breach of the lease agreement.
Following the jury’s verdict, the district court denied Schiff’s motion to offset the damages by the amount that Winchell received as insurance proceeds. The district court also denied Schiff’s motion for a new trial under NRCP 59, and entered judgment on the jury’s verdict. This appeal and cross-appeal followed.

DISCUSSION

On appeal, Winchell argues that the district court erred in entering judgment as a matter of law on his claims for breach of the covenant of quiet enjoyment and trespass, and in denying his request for punitive damages. On cross-appeal, Schiff asserts that substantial evidence does not support the jury’s findings and that, even if the findings were supported, the court should have remitted the award to exclude amounts relating to loss of business and offset the damages by the amount that Winchell received as insurance proceeds. With respect to the damages awarded on her breach of contract claim, Schiff asserts the district court abused its discretion in denying her motion for additur or a new trial because the award was clearly inadequate. After addressing whether substantial *944 evidence supports the jury’s verdict and damages, we turn to Winchell’s argument that the court erred in disposing of his other claims and denying punitive damages, before resolving Schiff s remaining assignments of error.'

Conversion

On cross-appeal, Schiff contends that substantial evidence does not support the jury’s finding with regard to Winchell’s conversion claim. “Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.”[2] In order to show conversion, Winchell must prove that Schiff “wrongfully exerted [dominion] over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights.”[3] While conversion requires a physical act of dominion over personal property, liability for conversion is predicated upon “general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge.”[4] Therefore, Winchell must demonstrate that Schiff exerted an act of dominion over his personal property, in derogation of his rights in the property.
At trial, evidence was presented showing that Schiff’s agent, Beryl Duncan, exerted dominion over Winchell’s storage unit by directing the locksmith to replace the locks and disable the alarm system. In addition, evidence showed that Schiff’s representatives were the only people who had access to the storage unit after the locks were changed and that it was during this period of Schiff’s exclusive control when Winchell’s inventory was removed.
From that evidence, the jury could have reasonably inferred that Schiff wrongfully exerted dominion over Winchell’s storage unit and inventory, which was in derogation of his rights in the property. Therefore, we conclude that substantial evidence supports the jury’s finding that Schiff was liable for conversion.[5]
Schiff alternatively argues that even if substantial evidence supports Winchell’s conversion claim, the jury’s award of $210,000 *945 must be remitted to reflect Winchell’s actual losses. According to Schiff, actual losses must be limited to Winchell’s converted inventory, which was valued somewhere between $30,000 and $45,000. We disagree.
During trial, Winchell testified that the fair market value of his business was approximately $500,000. This testimony was supported by documentary evidence in the form of numerous profit and loss statements, and federal income tax returns. In Bader v. Cerri, we noted that the full value of the property at the time of conversion is an appropriate measure of damages when the defendant is unable or unwilling to return the property.[6] We also concluded that when the conversion causes “a serious interference to a party’s rights in his property ... the injured party should receive foil compensation for his actual losses.”[7] Additionally, we recognize that the property value is not the sole measure of damages.
Here, the record reveals that the conversion of Winchell’s inventory resulted in the demise of his wholesale fresh fish business. No interference can be more serious than one that results in the termination of another’s business. Accordingly, we conclude that Winchell is entitled to the value of his lost business and the lost inventory’s value as compensation for his actual losses, which the jury determined was worth approximately $210,000 on the day of the conversion.

Collateral source

We now turn to Schiff’s argument that the district court abused its discretion by refusing to offset the award of damages by $33,084, the amount Winchell recovered under the insurance policy. Before trial, the district court advised the parties that evidence of a collateral source of payment would not be admissible. Following the jury’s verdict, however, the district court held that the collateral source rule precluded any offset for the amount Winchell recovered from insurance. We disagree.
The collateral source rule is a per se rule that bars the admission of a collateral source of payment for a loss or injury into evidence *946 for any purpose.[8] The purpose of the collateral source rule is to prevent “the jury from reducing the plaintiff’s damages on the ground that he received compensation for his injuries from a source other than the tortfeasor.”[9] The collateral source rule provides that where “ ‘an injured party received some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor.’ ”[10]
In this case, we are not convinced that Winchell’s recovery under the insurance policy was from a source wholly independent of the tortfeasor. However, regardless of whether Winchell’s recovery was from an independent source, he was contractually obligated to make the insurance proceeds available to Schiff for any losses arising from his use of the premises.[11] Therefore, Schiff is entitled to an offset of $33,084, the amount Winchell recovered under the insurance policy.

Judgment as a matter of law

Winchell challenges the district court’s ruling that Schiff was entitled to judgment as a matter of law on Winchell’s claims for breach of quiet enjoyment and trespass, and denying his request for punitive damages. Under NRCP 50(a)(1), the district court may grant a motion for judgment as a matter of law if the nonmoving party “has failed to prove a sufficient issue for the jury.” Similarly, the district court may deny the motion if the nonmoving party has presented sufficient evidence such that the jury could grant relief *947 to that party.[12] In ruling on the “motion for judgment as a matter of law, the district court must view the evidence and all inferences in favor of the nonmoving party.”[13] This court applies that “same standard on appeal.”[14] Accordingly, we must perform a de novo review of the district court’s order.

Breach of quiet enjoyment

Winchell contends that the district court erred in granting judgment as a matter of law on his cause of action for breach of the covenant of quiet enjoyment. The purpose of the covenant of quiet enjoyment is to secure tenants against the acts or hindrances of landlords.[15] Therefore, to prove a sufficient issue for breach of the covenant of quiet enjoyment, the tenant need only provide evidence demonstrating constructive eviction; actual eviction is not required.[16] We conclude that actual eviction is not a prerequisite to a claim for breach of a covenant of quiet enjoyment because such a prerequisite would increase the tenant’s suffering by requiring him to await the landlord’s eviction before asserting breach of the covenant.
Under the lease agreement, Schiff and her agents were permitted to enter Winchell’s storage unit at any reasonable time for the purpose of inspection or maintenance. Relying on this lease provision, the district court found that Schiff’s entry into Winchell’s storage unit was reasonable. We agree with that conclusion.
In this case, Winchell could not show that he was constructively evicted because he voluntarily surrendered any right to refuse Schiff’s reasonable entry under the terms of the lease. Accordingly, the district court did not err in granting judgment as a matter of law on the cause of action for breach of the covenant of quiet enjoyment.

Trespass

Similarly, we conclude that the district court was correct in granting judgment as a matter of law on Winchell’s trespass claim because Schiff’s entry into the storage facility was reasonable and permitted under the terms of the lease agreement. A tenant *948 may maintain an action of trespass against a landlord for the wrongful invasion of the tenant’s right of possession, absent a showing that the landlord has reserved a right of entry into the leased premises.[17]
As previously noted, Schiff reserved the right of entry into the storage unit during all reasonable times for the purpose of inspection or maintenance. Winchell provided no evidence suggesting that Schiff’s entry was not for the exclusive purpose of inspecting the unit to ensure that the electricity was still running. Accordingly, we conclude that the district court was correct in dismissing Winchell’s cause of action for trespass.

Punitive damages

Winchell also asserts that Schiff’s conduct was oppressive. Under Nevada law, punitive damages may be awarded when the plaintiff proves fraud, malice, or oppression by clear and convincing evidence.[18] NRS 42.001(4) provides that:
“Oppression” means despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person.
NRS 42.001(1) provides that:
“Conscious disregard” means the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences.
Thus, the district court has discretion to determine whether the party’s conduct merits punitive damages as a matter of law.[19] Based upon the evidence presented during trial, Schiff’s entry does not demonstrate a conscious disregard for Winchell’s rights and thus does not rise to the level of fraud, malice, or oppression. Accordingly, we conclude that the district court did not abuse its discretion in denying Winchell punitive damages.

Additur

Following trial, Schiff moved for additur regarding the jury’s award of damages on her breach of contract claim. She now challenges the district court’s refusal to grant additur. Specifically, *949 Schiff argues that the jury’s award of $2,880 for Winchell’s early termination of the lease agreement is clearly inadequate and warrants additur or, in the alternative, a new trial on the issue of damages. We disagree.
“[A]dditur is a just, speedy, efficient, and inexpensive vehicle to correct an inadequate jury verdict.”[20] In order to obtain additur, the moving party must satisfy a two-part test: (1) demonstrate that “the damages are clearly inadequate and, if so,” (2) demonstrate that “the case would be a proper one for granting a motion for a new trial limited to damages.”[21] If both prongs are met, the court may exercise its discretion to order a new trial unless the non-moving party acquiesces to the court’s additur.[22]
Schiff contends that the jury’s award of $2,880 was clearly inadequate because the award did not account for the damages resulting from the cleaning, repairing, and re-renting of the storage unit, as Schiff submitted evidence during trial that the damages resulting from Winchell’s early termination of the lease amounted to $10,339.42.
Winchell responded with evidence that Schiff hired independent maintenance staff for the sole purpose of billing Winchell for the cleanup. In addition, Winchell was able to demonstrate that Schiff waited several months before attempting to clean and re-rent the storage unit. Accordingly, we conclude that it was within the province of the jury to reject Schiff’s evidence of additional damages. Therefore, the jury’s award of $2,880 was not clearly inadequate and additur was not warranted. Additionally, we conclude that the parties remaining arguments are without merit.[23]

CONCLUSION

We conclude that substantial evidence supports Winchell’s claim for conversion and the jury’s award of actual damages for the re- *950 suiting loss of inventory and business. We also conclude that Winchell failed to allege facts demonstrating claims for breach of the covenant of quiet enjoyment, and trespass, and to show that punitive damages were appropriate.
Further, additur is not warranted in this case because Schiff’s evidence as to additional damages was sufficiently undermined during trial. However, the jury’s award of damages for Winchell’s actual losses should have been offset by $33,084, the amount Winchell recovered under the insurance policy. Finally, we conclude that a new trial is not warranted here. Accordingly, we affirm the judgment of the district court in part, reverse in part, and remand for proceedings consistent with this opinion.
Parraguirre, J., concurs.

On appeal, Winchell does not contest the dismissal of his breach of contract claim and thus we need not address it.

First Interstate Bank v. Jafbros Auto Body, 106 Nev. 54, 56, 787 P.2d 765, 767 (1990) (internal quotation marks and citation omitted).

See Edwards v. Emperor’s Garden Rest., 122 Nev. 317, 328, 130 P.3d 1280, 1287 (2006) (citing Wantz v. Redfield, 74 Nev. 196, 326 P.2d 413 (1958)).

Evans v. Dean Witter Reynolds, Inc., 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000).

Schiff also maintains that her agent’s entry into the storage facility was justified under the circumstances. We do not address that issue, however, because conversion does not require a showing of wrongful intent. See id.

 96 Nev. 352, 356, 609 P.2d 314, 317 (1980), overruled on other grounds by Evans, 116 Nev. at 608, 611, 5 P.3d at 1050-51.

 Id.; see also O’Meara v. North American Mining Co., 2 Nev. 112, 124 (1866) (concluding in response to a petition for rehearing that “the owner of the property wrongfully converted or detained shall receive as a measure of damage the market value of the article at the time of the conversion, together with any damage which he is proven to have sustained from the loss of its possession”).

Proctor v. Castelletti, 112 Nev. 88, 90 & n.l, 911 P.2d 853, 854 & n.l (1996).

Bass-Davis v. Davis, 122 Nev. 442, 454, 134 P.3d 103, 110 (2006) (recognizing that collateral source evidence is generally prohibited because it prejudices the jury and greatly increases the likelihood that the jury will reduce an award of damages because it knows the plaintiff is already receiving compensation).

Proctor, 112 Nev. at 90 n.l, 911 P.2d at 854 n.l (quoting Hrnjak v. Graymar, Incorporated, 484 P.2d 599, 602 (Cal. 1971)).

The indemnity provision provides, in pertinent part:
During the entire term of this Lease, the Tenant shall, at the Tenant’s sole cost and expense, but for the mutual benefit of Landlord and Tenant, maintain general public liability insurance against claims for personal injury, death or property damage occurring in, upon or about the demised premises and on any sidewalks directly adjacent to the demised premises.
All such policies of insurance shall be issued in the name of Tenant and Landlord and for the mutual and joint benefit and protection of the parties, and such policies of insurance or copies thereof shall be delivered to the Landlord.

Fernandez v. Admirand, 108 Nev. 963, 968, 843 P.2d 354, 358 (1992).

Nelson v. Heer, 123 Nev. 217, 222, 163 P.3d 420, 424 (2007).

Banks v. Sunrise Hospital, 120 Nev. 822, 839, 102 P.3d 52, 64 (2004).

See Ripps v. Kline, 70 Nev. 510, 513, 275 P.2d 381, 382 (1954).

Carder, Inc. v. Cash, 97 P.3d 174, 184 (Colo. Ct. App. 2003); McNamara v. Wilmington Mall Realty Corp., 466 S.E.2d 324, 328-29 (N.C. Ct. App. 1996).

See 52A C.J.S. Landlord and Tenant § 721 (2003); 49 Am. Jur. 2d Landlord and Tenant § 437 (2006).

See NRS 42.005.

Countrywide Home Loans v. Thitchener, 124 Nev. 725, 739-40, 192 P.3d 243, 252-53 (2008).

Drummond v. Mid-West Growers, 91 Nev. 698, 712 n.8, 542 P.2d 198, 207 n.8 (1975).

Id. at 712, 542 P.2d at 208.

Id.

On appeal, Schiff contends that a new trial is warranted due to Winchell’s improper references to insurance coverage on direct examination and during closing arguments. Having thoroughly reviewed the record, we conclude that any error exhibited by Winchell’s improper reference to his insurance coverage on direct examination was harmless. In addition, Schiff failed to raise a timely objection to the statements made by Winchell during closing arguments. “When die party has not objected to the complained-of conduct, the district court should generally deem this issue to be waived.” Lioce v. Cohen, 124 Nev. 1, 19, 174 P.3d 970, 981 (2008). Consequently, we conclude that the district court properly denied Schiff’s motion for a new trial.