An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

THOMAS A. GOLDENBERG, M.D.,
Appellant,
vs.
GEORGIA WOODARD, INDIVIDUALLY
AND AS THE SURVIVING SPOUSE
AND SUCCESSOR OF HERSCHEL
WOODARD,
Respondent.

No. 57232

GEORGIA WOODARD,
INDIVIDUALLY, AND GEORGIA
WOODARD AS THE SURVIVING
SPOUSE, SUCCESSOR AND
REPRESENTATIVE OF HERSCHEL
WOODARD, DECEASED,
Appellant,
vs.
THOMAS A. GOLDENBERG, M.D.,
Respondent.

No. 58151

**FILED**

JUN 20 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

These are consolidated appeals from a judgment following a jury verdict in a professional negligence action. Ninth Judicial District Court, Douglas County; David R. Gamble, Judge.

### BACKGROUND

Thomas Goldenberg, M.D. is an obstetrician and gynecologist. In early 2004, Dr. Goldenberg decided to expand his practice by offering colonoscopies. Dr. Goldenberg attended a weekend continuing medical education course in October 2004 and observed a colonoscopy demonstration on a mannequin. Included in the materials provided to Goldenberg at this course were the guidelines published by the American Society of Gastrointestinal Endoscopists, including their requirement that 100 colonoscopies be performed under the supervision of an instructor

before a physician can be evaluated for competence in the procedure. This course was Dr. Goldenberg's only formal training in the colonoscopy procedure.

Although he requested privileges to perform colonoscopies at two different hospitals, both hospitals denied his request due to his lack of demonstrated qualifications to perform the procedure. Dr. Goldenberg eventually obtained a provisional privilege to perform colonoscopies from Lake Tahoe Surgery Center (LTSC) on the condition that he perform the procedures under the supervision of a physician experienced in performing colonoscopies. LTSC later admitted that this decision was a violation of its bylaws, as Dr. Goldenberg's experience did not meet LTSC's credentialing criteria, which require that a physician must have privileges to perform a procedure at a local hospital in order to obtain privileges to perform that procedure at LTSC.

In December 2004, Dr. Goldenberg conducted his annual examination of then 68-year-old Georgia Woodard, and as part of the exam recommended that she undergo a colonoscopy to screen for cancer. Dr. Goldenberg told Ms. Woodard that he could perform her colonoscopy at LTSC. Ms. Woodard testified that Dr. Goldenberg did not disclose to her that he had never performed a colonoscopy on a patient or that he had only conditional privileges to perform the procedure at LTSC with supervision.

Ms. Woodard underwent her colonoscopy at LTSC in March 2005. Although Dr. Goldenberg had previously arranged for a supervising physician to oversee the procedure, the supervising physician was not present at the start of Ms. Woodard's colonoscopy. Dr. Goldenberg initiated the procedure regardless. When Dr. Goldenberg experienced

difficulty advancing the scope through the colon, the supervising physician was summoned and took over the procedure.

Ms. Woodard awoke from the procedure in pain and continued to experience pain over the next week. Despite Dr. Goldenberg's assurances that her condition was improving, Ms. Woodard went to the emergency room in extreme pain and was admitted to the hospital. Subsequent exploratory surgery revealed an instrument-induced half-dollar-size hole in her colon. Ms. Woodard remained in a coma in the intensive care unit for three weeks with a ventilator and feeding tube. The repair of her colon required multiple follow-up surgeries and left Ms. Woodard with a colostomy bag and difficulty walking for many months. After her discharge from the hospital, Ms. Woodard spent two additional weeks in a rehabilitation facility.

Thereafter, Ms. Woodard filed a complaint against Dr. Goldenberg and LTSC, alleging various tort claims.[1] Following an eight-day trial, the jury found against Dr. Goldenberg and LTSC on claims of professional negligence and fraud, awarding Ms. Woodard $610,000 in economic damages and $1 million in noneconomic damages. The jury apportioned 80 percent of Ms. Woodard's total damages to negligence and 20 percent to fraud. From this, the jury apportioned 40 percent of the negligence liability to Dr. Goldenberg.

Dr. Goldenberg filed several post-trial motions, including a motion to reduce the noneconomic professional negligence damages to an aggregate cap of $350,000 before apportioning liability between Dr.

---

[1]Ms. Woodard's husband Herschel also filed a loss of consortium claim. Hershel died in 2010, and Ms. Woodard has been substituted in his place for these consolidated appeals.

Goldenberg and LTSC pursuant to NRS 41A.035. The district court denied this motion, concluding that although NRS 41A.035 limits noneconomic damages per *action* to $350,000, the limit applied separately against each defendant.

## DISCUSSION

Dr. Goldenberg argues on appeal that the district court erred by (1) upholding the jury's finding of fraud against him, (2) ruling that NRS 41A.035's $350,000 damages cap applies separately to each defendant, and (3) refusing to reduce or offset the damages awarded against him.[2]

### Dr. Goldenberg's appeal

Dr. Goldenberg argues on appeal that the district court erred by finding that Ms. Woodard's fraud claim does not fall within NRS Chapter 41A's definition of professional negligence. He further argues

---

[2]Ms. Woodard also filed a cross-appeal in which she raised various constitutional challenges to NRS 41A.035's noneconomic damages cap. Because NRS 41A.035 was not triggered under the district court's apportionment of her noneconomic damages and because Ms. Woodard does not point to any arguments made to the district court or any district court ruling on the constitutionality of NRS 41A.035, Ms. Woodard is not aggrieved by the district court's judgment. We therefore lack jurisdiction over this portion of Ms. Woodard's cross-appeal. NRAP 3A(a); *Ford v. Showboat Operating Co.*, 110 Nev. 752, 756, 877 P.2d 546, 549 (1994) ("A party who prevails in the district court and who does not wish to alter any rights of the parties arising from the judgment is not aggrieved."). Both parties also raised numerous arguments in their appeals that they failed to properly preserve or develop for appellate review, and we decline to address those arguments on appeal. *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (providing that this court need not address issues raised for the first time on appeal); *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (explaining that this court need not consider claims that are not cogently argued or supported by relevant authority).

that there is no evidence in the record that he made any representations regarding his ability to perform Ms. Woodard's colonoscopy and that his representation that he could perform the procedure was not fraudulent because he intended to have a supervising physician assist him at the time he made the representation.

*Fraud as a separate claim from professional negligence*

In resolving this issue, this court must first address whether the district court properly found that Ms. Woodard's fraud claim fell outside of NRS Chapter 41A's definition of professional negligence. Although this court has not previously addressed the issue, California courts have concluded that intentional tort claims do not fall within that state's Medical Injury Compensatory Reform Act (MICRA) when the allegations of an intentional tort claim are "qualitatively different than professional negligence." *Unruh-Haxton v. Regents of Univ. of Cal.*, 76 Cal. Rptr. 3d 146, 155 (Ct. App. 2008) (citing *Perry v. Shaw*, 106 Cal. Rptr. 2d 70 (Ct. App. 2001)). NRS Chapter 41A is closely aligned with MICRA, which defines professional negligence in nearly identical language as NRS 41A.015, which defines professional negligence as "a negligent act or omission to act by a provider of health care in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death." *See* Cal. Civ. Proc. Code § 364(f)(2) (West 2009) (defining professional negligence as a "negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death"); *State ex rel. Harvey v. Second Judicial Dist. Court*, 117 Nev. 754, 763, 32 P.3d 1263, 1269 (2001) (holding that a statute derived from a sister state is presumably adopted with the construction given it by the sister state's courts).

When the circumstances giving rise to the allegations of fraud relate to "wrongful intentional conduct, not mere negligence," California courts have held that such claims are not subject to professional negligence statutes. *Unruh-Haxton*, 76 Cal. Rptr. 3d at 157; *see Covenant Care, Inc. v. Superior Court*, 86 P.3d 290, 295 (Cal. 2004) (noting that "intentional, egregious" conduct cannot be described as "mere 'professional negligence'"). Those courts reason that professional negligence statutes were not intended to "exempt intentional wrongdoers from liability by treating such conduct as though it had been nothing more than mere negligence." *Perry v. Shaw*, 106 Cal. Rptr. 2d 70, 78 (Ct. App. 2001). And because legislators have specifically limited the application of certain statutes to "professional negligence" claims, California courts have determined that it would be inconsistent with the letter and spirit of those laws to hold that claims for intentional torts "are really just another form of professional negligence." *Unruh-Haxton*, 76 Cal. Rptr. 3d at 157.

We are persuaded by the reasoning of the California courts. Our statute defines professional negligence as "a negligent act or omission to act by a provider of health care in the rendering of professional services." NRS 41A.015. This court reviews questions of law, such as statutory interpretation, de novo. *Estate of Smith v. Mahoney's Silver Nugget, Inc.*, 127 Nev. ___, ___, 265 P.3d 688, 690 (2011). The medical malpractice statutory scheme set forth under NRS Chapter 41A limits the scope of claims to which the professional negligence statutes apply to claims based on a health care provider's "negligent" acts or omissions. Such statutes are not applicable where the facts giving rise to the intentional tort cause of action concern *wrongful intentional conduct*, not mere negligence, and are thus *qualitatively different* from the professional negligence claim. *See Unruh-Haxton*, 76 Cal. Rptr. 3d at 155; *Perry*, 106

Cal. Rptr. 2d at 77-78; *see also Baker v. Sadick*, 208 Cal. Rptr. 676, 680-81 (Ct. App. 1984). Willful wrongs, including performing unnecessary or unconsented-to surgery or procedures and fraudulently inducing a patient to submit to surgery or procedures, constitute more than mere negligence and allow for the recovery of additional fraud damages. *Baker*, 208 Cal. Rptr. at 680-81.

Whether a cause of action brought against a health care provider under an intentional tort theory is "qualitatively different" than a claim for professional negligence subject to NRS Chapter 41A's limitations should be evaluated on a case-by-case basis. *See Smith v. Ben Bennett, Inc.*, 35 Cal. Rptr. 3d 612, 615 (Ct. App. 2005) (noting that whether professional negligence statutes are applicable to claims grounded on other legal theories must be examined on a case-by-case basis). Here, Ms. Woodard's professional negligence claim was based on allegations that Dr. Goldenberg's performance of her colonoscopy fell below the standard of care. In contrast, her fraud claim arose from Dr. Goldenberg's representation that he could perform the procedure, despite his knowledge that he had never performed a colonoscopy, that two hospitals had denied him privileges to perform colonoscopies based on his lack of experience, that he had not met the minimum requirements to be evaluated for competence in the procedure under the American Society of Gastrointestinal Endoscopists' guidelines, and that his privileges at LTSC were conditioned on his supervision during the procedure by a doctor experienced in performing colonoscopies. *See Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 447, 956 P.2d 1382, 1386 (1998) (setting forth the elements for a fraudulent misrepresentation claim). Thus, this court concludes that Dr. Goldenberg's misrepresentation was an "intentional act of egregious abuse," which exceeds the scope of mere negligence allegations related to

his falling below the standard of care. *Unruh-Haxton*, 76 Cal. Rptr. 3d at 157.

The district court was therefore correct in finding that Ms. Woodard's fraud claim does not fall within NRS Chapter 41A's definition of professional negligence, and thus, that her fraud damages are not subject to either NRS 41A.035's cap or NRS 41A.045's abrogation of joint and several liability.

*Substantial evidence supported the jury's finding of fraud*

As to Dr. Goldenberg's argument that insufficient evidence supported the jury's finding of fraud against him, when the sufficiency of the evidence in support of a claim is challenged on appeal, this court views all the evidence with inferences in favor of the prevailing party and determines whether substantial evidence supports the jury's verdict. *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 273, 71 P.3d 1264, 1267 (2003). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Winchell v. Schiff*, 124 Nev. 938, 944, 193 P.3d 946, 950 (2008) (internal quotation marks omitted).

In Nevada, an intentional misrepresentation is one "that is made with either knowledge or belief that it is false or without a sufficient foundation." *Nelson v. Heer*, 123 Nev. 217, 225, 163 P.3d 420, 426 (2007); *see also Barmettler*, 114 Nev. at 447, 956 P.2d at 1386. When a person makes a truthful representation, but knows or believes that the representation is materially misleading because he has failed to provide additional or qualifying information, the incomplete statement is a fraudulent misrepresentation. Restatement (Second) of Torts § 529 (1977). "[I]t is . . . fundamental that a person who speaks has a duty to disclose enough to prevent his words from being misleading. A statement disclosing favorable information but omitting all reference to material

unfavorable facts breaches that duty." *Baskin v. Hawley*, 807 F.2d 1120, 1132 (2d Cir. 1986).

In this case, the jury heard testimony that at the time when Dr. Goldenberg represented to Ms. Woodard that he could perform her colonoscopy, he had never performed a colonoscopy on a live patient, and he had only attended a weekend course on colonoscopy training. Dr. Goldenberg had also been denied privileges to perform the procedure by two hospitals and knew that in order to be evaluated for competence in the procedure he needed to obtain consent to perform supervised colonoscopies on a number of patients. Dr. Goldenberg also knew that he could only perform the procedure under the supervision of another doctor. But Dr. Goldenberg failed to inform Ms. Woodard of these limitations on his ability to perform the procedure and of his inexperience, and instead, he acted in a manner that led Ms. Woodard to believe that he was qualified to perform the procedure himself. Dr. Goldenberg's patient advisor and surgery scheduler, who scheduled Ms. Woodard's surgery and answered Ms. Woodard's questions about the procedure, also testified that she would not have told Ms. Woodard that Dr. Goldenberg was learning to perform the colonoscopy procedure because Dr. Goldenberg would have frowned on her giving Ms. Woodard that information.

When inferences from this testimony are viewed in Ms. Woodard's favor, substantial evidence supports the jury's finding of fraud. *J.J. Indus., LLC,* 119 Nev. at 273, 71 P.3d at 1267; *see Winchell,* 124 Nev. at 944, 193 P.3d at 950. Once Dr. Goldenberg volunteered that he could perform Ms. Woodard's colonoscopy, he was required to provide her with all the relevant information to prevent his representation from being misleading. *See Nelson,* 123 Nev. at 225, 163 P.3d at 426; *Baskin,* 807 F.2d at 1132. Dr. Goldenberg's failure to provide Ms. Woodard with the

additional information regarding the limitations on his privileges to perform her colonoscopy and his inexperience in the procedure was materially misleading and constituted an intentional misrepresentation. For these reasons, we affirm the jury's finding of fraud against Dr. Goldenberg and the damages awarded as a result.

*NRS 41A.035 provides an aggregate cap on noneconomic damages*

Dr. Goldenberg also challenges the district court's application of NRS 41A.035's noneconomic damages cap separately with respect to the negligence damages awarded against each defendant, rather than in the aggregate. Dr. Goldenberg argues that the district court should have capped the noneconomic negligence damages award at $350,000 before apportioning 40 percent of the noneconomic negligence damages to him.

NRS 41A.035 provides that "[i]n an action for injury or death against a provider of health care based upon professional negligence, the injured plaintiff may recover noneconomic damages, but the amount of noneconomic damages awarded in such an action must not exceed $350,000." Dr. Goldenberg maintains that the term "action" refers to Ms. Woodard's entire professional negligence claim as a whole, rather than to the individual professional negligence claims against Dr. Goldenberg and LTSC. Dr. Goldenberg relies on this court's decision in *United Ass'n of Journeymen and Apprentices v. Manson*, 105 Nev. 816, 820, 783 P.2d 955, 957 (1989), in which we discussed that the terms "action" and "claim" carry different meanings, and "[u]nlike a claim, an action includes the original claim and any crossclaims, counterclaims, and third-party claims." In contrast, the district court relied on *State v. Webster*, 88 Nev. 690, 695-96, 504 P.2d 1316, 1320 (1972), which implies that the term action refers to each separate claim, and thus, applies separately to each defendant.

"When the language of a statute is expressly clear and unambiguous, the apparent intent must be given effect, as there is no room for construction. If, however, a statutory provision is ambiguous, then this court should attempt to follow the Legislature's intent." *Metz v. Metz*, 120 Nev. 786, 791-92, 101 P.3d 779, 783 (2004). A statute is ambiguous when it is capable of two or more reasonable interpretations. *Clark Cnty. v. S. Nev. Health Dist.*, 128 Nev. ___, ___, 289 P.3d 212, 215 (2012). Because the district court and Dr. Goldenberg's interpretations of "action" are both reasonable, NRS 41A.035 is ambiguous, and we look to the legislative history to aid in our interpretation of the statute. *Id.*

In determining the meaning of "action" in NRS 41A.035, the 2004 amendments to now-repealed NRS 41A.031 are particularly helpful. Before amendment, NRS 41A.031 limited "the noneconomic damages awarded *to each plaintiff from each defendant*," while the current version of NRS 41A.035 limits "the amount of noneconomic damages awarded *in such an action*." (Emphases added.) This alteration strongly indicates that noneconomic damages should be limited on a per-incident basis. *See McKay v. Bd. of Supervisors*, 102 Nev. 644, 650, 730 P.2d 438, 442 (1986) ("It is ordinarily presumed that the legislature, by deleting an express portion of a law, intended a substantial change in the law.").

This conclusion is further reinforced by the current statute's legislative history, which shows that the initiative was intended to set forth an aggregate cap per incident, with no exceptions. Hearing on S.B. 97 Before the Senate Judiciary Comm., 72d Leg. (Nev. March 24, 2003). The legislative history also draws comparisons with similar California legislation, describing NRS 41A.035's counterpart as a cap "per incident, not per claimant, and not per doctor." *Id.*; *see* Cal. Civ. Code § 3333.2 (West 2009); *Colburn v. U.S.*, 45 F. Supp. 2d 787, 793 (S.D. Cal. 1998)

SUPREME COURT
OF
NEVADA

(O) 1947A

("Neither the California Supreme Court nor the appellate courts have ever held that a single plaintiff can recover more than the [Medical Injury Compensation Reform Act] limit for noneconomic damages. To the contrary, the courts have consistently limited the maximum recovery to $250,000, regardless of the number of claims alleged.").

Based on the foregoing, we conclude that NRS 41A.035 limits noneconomic damages to an aggregate of $350,000 per incident, regardless of how many plaintiffs, defendants, or claims are involved. *Manson*, 105 Nev. at 820, 783 P.2d at 957. Thus, the district court should not have applied NRS 41A.035 on a per-defendant basis, and we reverse in part that portion of the district court order and remand this matter to the district court to redetermine damages consistent with this order.

*Challenges to the district court's damages rulings*

Dr. Goldenberg also challenges the district court's ruling that he is not entitled to an offset of damages based on LTSC's settlement with Ms. Woodard. We disagree. NRS 41A.045 has abrogated joint and several liability in actions based on professional negligence. Because Dr. Goldenberg is only severally liable for his portion of the apportioned negligence damages, he is therefore not entitled to an offset. *See* NRS 17.225(2) ("The right of contribution exists only in favor of a tortfeasor who has paid more than his or her equitable share of the common liability. . . ."). Moreover, NRS 17.255 expressly bars an intentional tortfeasor's right to contribution. *See Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 609-10, 5 P.3d 1043, 1050 (2000) (concluding that intentional tortfeasors are not entitled to an offset based on settlements by

their joint tortfeasors). We therefore affirm that portion of the district court's judgment.[3]

## CONCLUSION

Based on the foregoing, we therefore

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Gibbons

_____, J.          _____, J.
Parraguirre                               Douglas

_____, J.          _____, J.
Cherry                                    Saitta

cc:     Ninth Judicial District Court Dept. 1
        Paul F. Hamilton, Settlement Judge
        Durney & Brennan/Reno
        Molof & Vohl
        Schuering Zimmerman & Doyle LLP
        Andre M. Mura
        Douglas County Clerk

---

[3]Dr. Goldenberg also contests the district court's refusal to reduce Ms. Woodard's economic damages to the amount actually paid in satisfaction of her medical bills. Because Dr. Goldenberg did not challenge the district court's order regarding the unconstitutionality of portions of NRS 42.021, which allows evidence relating to collateral source benefits to be introduced in professional negligence cases, we determine that the district court properly applied *Bass-Davis v. Davis*, 122 Nev. 442, 453-54, 134 P.3d 103, 110-11 (2006), to Ms. Woodard's economic damages and did not err in declining to further reduce the economic damages award.

SUPREME COURT
OF
NEVADA

(O) 1947A

cc:    Ninth Judicial District Court Dept. 1
Paul F. Hamilton, Settlement Judge
Durney & Brennan/Reno
Molof & Vohl
Schuering Zimmerman & Doyle LLP
Andre M. Mura
Douglas County Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

HARDESTY, J., with whom Pickering, J., agrees, concurring in part and dissenting in part:

I fully concur with the majority's disposition in this case, but dissent because I feel this case should be resolved in a published opinion. Rule 9(a) of the Internal Operating Procedures (IOP) of this court compels the disposition by opinion of a case that presents "a novel question of law, an issue of public importance, or sets a new legal precedent."

In these consolidated cases, we resolve not only novel questions of law but also issues of public importance that set new legal precedent.

_____, J.
Hardesty

I concur:

_____, J.
Pickering

Supreme Court
OF
Nevada

(O) 1947A