AT&T TECHNOLOGIES, INC., Formerly Known as WESTERN ELECTRIC COMPANY, Appellant, v. RICHARD E. REID, Respondent.

No. 22544

June 22, 1993
855 P.2d 533

*Woodburn, Wedge & Jeppson, Shawn B. Meador* and *Suellen Fulstone,* Reno, for Appellant.

*Goedert & Michaels,* Reno, for Respondent.

## OPINION

*Per Curiam:*

On October 14, 1980, respondent Richard Reid was injured during the course of his work. At the time he was employed by Western Electric Company, the predecessor of appellant AT&T Technologies, Inc. ("AT&T"). Reid's injury occurred when an elevator manufactured and maintained by Otis Elevator Company malfunctioned. Western Electric maintained a private accident disability plan which paid Reid's medical expenses and wage continuation benefits (the equivalent of workers' compensation benefits). Western Electric was a "grandfathered self-insurer" under the provisions of NRS 616.255[1] and was thus outside the purview of the Nevada Industrial Insurance Act ("NIIA").

In May of 1982, Reid filed a civil action against Western Electric,[2] Otis Elevator and Nevada Bell (the owner of the building which housed the elevator). Western Electric was voluntarily dismissed from that action on September 30, 1983, expressly reserving its subrogation rights.

In December, 1983, while Reid's civil action was still pending, Western Electric was acquired by AT&T. At that time, AT&T became a certified self-insured employer under the provisions of the NIIA and continued to pay Reid benefits pursuant thereto.

In January of 1984, Reid obtained a judgment against Otis

---

[1]NRS 616.255(1) provides that the NIIA is inapplicable to "(b) Employments covered by private disability and death benefit plans which comprehend payments of compensation of equal or greater amounts than those covered in this chapter, and which were in effect for at least 1 year before July 1, 1947." Western Electric met these criteria.

[2]As a grandfathered self-insurer, Western Electric was not protected by the NIIA's exclusive remedy provisions and remained subject to a common law action. *See* McAffee v. Garrett Freightlines, Inc., 95 Nev. 483, 486, 596 P.2d 851, 853 (1979) ("Employers opting to continue private coverage pursuant to NRS 616.255 are left in the same legal position; they must secure adequate private protection or be subject to common law suits and stand liable for damages assessed against them.").

Elevator for $317,000, including $137,000 for loss of future earnings, $6,500 for future medical expenses and $75,000 for future pain and suffering. The judgment was affirmed on appeal. *See* Otis Elevator Co. v. Reid, 101 Nev. 515, 706 P.2d 1378 (1985). The judgment was paid in the latter part of 1985; AT&T received no subrogation benefits at that time.

Relying on the 1981 amendments to the NIIA which granted grandfathered self-insurers subrogation rights, AT&T asserted its right to offset worker's compensation benefit payments against Reid's 1985 recovery. By letter of April 16, 1987, AT&T advised Reid that it would stop paying workers' compensation benefits until its portion of the third-party recovery was exhausted. Reid was informed that he would instead receive weekly accident disability benefits under AT&T's Sickness and Accident Disability Plan. At that juncture, AT&T had paid Reid over $90,000 in unreimbursed benefits.

Reid appealed AT&T's decision to the Nevada Department of Administration ("NDA"). In December of 1988, the NDA Appeals Officer determined that the NDA had jurisdiction to hear the matter notwithstanding the fact that Western Electric had not been a certified self-insurer when Reid was injured in 1980. *See* Dorion v. Bell Telephone Company of Nevada, 102 Nev. 5, 714 P.2d 174 (1986). The Appeals Officer also concluded that AT&T was entitled to suspend Reid's weekly worker's compensation benefits until AT&T's subrogation claim against Reid's third-party recovery was exhausted. Reid sought judicial review of that determination pursuant to NRS Chs. 233 and 616.

The district court reversed, concluding that all rights and obligations among Reid, Western Electric/AT&T, and any third-party tortfeasor vested as of October 14, 1980, and were unaffected by the 1981 legislative amendments to NRS 616.560. The district court remanded the case to the Appeals Officer with instructions to disallow AT&T's subrogation lien. This appeal followed.

On appeal, AT&T contends that it was entitled to assert a statutory right of subrogation against Reid's recovery from Otis Elevator.

## Discussion

NRS 616.560[3] governs subrogation rights between an insurer and an employee injured by a third-party tortfeasor. Once the

---

[3]NRS 616.560, as it existed at the time of Reid's tort recovery in 1985, provided in relevant part:

    1. When an employee coming under the provisions of this chapter receives an injury for which compensation is payable under this chapter and which was caused under circumstances creating a legal liability in

injured employee receives compensation under NIIA, an "insurer" acquires a right of action against the third-party tortfeasor. NRS 616.560(1)(b); *see also* 16 Couch on Insurance 2d (Rev. ed.) § 61:420 ("[A]n insurer's right to subrogation is generally predicated upon the payment of the insured's claim. . . ."). In 1981, NRS 616.560 was amended to include grandfathered self-insurers, such as AT&T, within the definition of "insurer." *See* NRS 616.1103.[4]

Reid contends that because AT&T, as Western Electric's successor, had *no statutory right of subrogation in 1980* when he was injured, AT&T is not entitled to reduce his benefits by the amount of his tort recovery. AT&T's right to subrogation under NRS 616.560 depends upon whether its predecessor, Western Electric, enjoyed subrogation rights against Reid's tort recovery. We conclude that Western Electric did have a right of subrogation against Reid's recovery from Otis Elevator.

Generally, subrogation is an equitable doctrine created to "'accomplish what is just and fair as between the parties.'" Laffranchini v. Clark, 39 Nev. 48, 55, 153 P. 250, 252 (1915) (citation omitted). It arises when one party has been compelled to

some person, other than the employer or a person in the same employ, to pay damages in respect thereof:

(a) The injured employee . . . may take proceedings against that person to recover damages, but the amount of the compensation to which the injured employee . . . [is] entitled under this chapter, including any future compensation under this chapter, must be reduced by the amount of the damages recovered, notwithstanding any act or omission of the employer or a person in the same employ which was a direct or proximate cause of the employee's injury.

(b) If the injured employee . . . receive[s] compensation under this chapter, the insurer has a right of action against the person so liable to pay damages and is subrogated to the rights of the injured employee . . . to recover therefor.

. . . .

2. In any case where the insurer is subrogated to the rights of the injured employee or of his dependents as provided in subsection 1, the insurer has a lien upon the total proceeds of any recovery from some person other than the employer, whether the proceeds of such recovery are by way of judgment, settlement or otherwise. The injured employee . . . [is] not entitled to double recovery for the same injury, notwithstanding any act or omission of the employer or a person in the same employ which was a direct or proximate cause of the employee's injury.

. . .

All references to NRS 616.560 are to the 1981 version, unless otherwise specified.

[4]NRS 616.1103 defines "insurer" as the state industrial insurance system, self-insured employers and those employers covered under the provisions of NRS 616.255 and 616.256.

satisfy an obligation that is ultimately determined to be the obligation of another. American Sur. Co. v. Bethlehem Nat'l Bank, 314 U.S. 314, 317 (1941). Equitable subrogation exists independently of any contractual relation between the parties. Memphis & Little Rock R.R. v. Dow, 120 U.S. 287, 301-302 (1887).

In the context of worker's compensation, absent a statutory subrogation right, the non-negligent employer who has been required to pay worker's compensation benefits to its employee for injuries caused by a third-party's negligence has a common-law right of subrogation to the employee's claim against the third-party tortfeasor. Geneva Const. Co. v. Martin Transfer & Storage Co., 114 N.E.2d 906 (Ill.Ct.App. 1953), aff'd, 122 N.E.2d 540 (Ill. 1954); see also, County of San Diego v. Sanfax Corp., 140 Cal.Rptr. 638, 644, n.7 (Cal. 1977) (even in the absence of legislative enactment, employer may recover payments made to its employee from a third-party who was responsible for the injury).

The subrogation rights embodied in NRS 616.560 are a codification of the common law principle of equitable subrogation. See, Allianz Ins. Co. v. Municipal Court, 179 Cal.Rptr. 334 (Cal.Ct.App. 1982); accord, McCormick v. Zander Reum Co., 184 N.E.2d 882 (Ill. 1962). AT&T's common law right of subrogation became effective as of the date in 1980 when its predecessor, Western Electric, commenced paying worker's compensation benefits to Reid. Subrogation rights under the common law were replaced by enactment of statutory subrogation under the 1981 amendment to NRS 616.560. See McCormick, 184 N.E.2d at 883-884. Thus, AT&T's status under NRS 616.560 remains the same as it was under the common law, "namely, subrogee to the claim of [its] employee against the third-party tort-feasor." Id. at 884. While AT&T's subrogation right arose through Western Electric in 1980, it was not entitled to reduce or cease Reid's benefits until Reid actually recovered damages from Otis Elevator. See NRS 616.560(1)(a).

Accordingly, we conclude that AT&T, as a self-insured employer, was entitled to deny Reid further benefits for his 1980 work-related injury to the extent of Reid's third-party recovery from Otis. To hold otherwise would permit Reid to recover damages from a third-party tortfeasor for the full extent of his injuries without any reduction for worker's compensation benefits paid by AT&T, thus giving Reid an impermissible double recovery. Such a holding would also be contrary to the statute's

contemplated purpose of preventing an employee from receiving a duplicative recovery. NRS 616.560(2); Breen v. Caesars Palace, 102 Nev. 79, 82, 715 P.2d 1070, 1072 (1986).

## Conclusion

For the reasons stated above, we reverse the order of the district court and reinstate the decision of the NDA Appeals Officer.[5]

---

[5]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.