IN THE SUPREME COURT OF THE STATE OF NEVADA

ST. PAUL FIRE & MARINE
INSURANCE COMPANY,
Appellant,
vs.
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.;
ROOF DECK ENTERTAINMENT, LLC,
D/B/A MARQUEE NIGHTCLUB,
Respondents.

No. 81344

FILED

DEC 0 8 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from two district court orders granting summary judgment, certified as final under NRCP 54(b), in an insurance subrogation matter. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

Respondent Roof Deck Entertainment, L.L.C., which does business as Marquee Nightclub (collectively, Marquee), operates and manages Marquee Nightclub for a subsidiary of nonparty The Cosmopolitan Hotel & Casino (Cosmopolitan) pursuant to a management agreement.[1] In 2014, a patron of Marquee sued Cosmopolitan and Marquee for negligent and intentional torts, seeking compensatory and punitive damages, after security members employed by Marquee injured the patron when attempting to oust him from the club. Marquee and Cosmopolitan tendered the action to Aspen Specialty Insurance Company (Aspen),[2] a primary insurer, and respondent National Union Fire Insurance Company of

---

[1]We only recount the facts as necessary to our disposition.

[2]Aspen is a party in this lawsuit but is not a party in this appeal.

22-38580

Pittsburgh, Pa. (National Union), an excess insurer, both of whom agreed to jointly defend the parties. Both Aspen's and National Union's respective policies named Marquee as the insured and Cosmopolitan as an additional insured. Around one month before trial, Cosmopolitan notified its primary insurer, nonparty Zurich Insurance Company (Zurich), and its excess insurer, appellant St. Paul Fire & Marine Insurance Company (St. Paul), of its potential exposure from the lawsuit. The case ultimately proceeded to trial, and the jury returned a verdict in favor of the patron for $160.5 million in compensatory damages, for which Cosmopolitan and Marquee were jointly and severally liable, and in favor of the patron's request for punitive damages. However, before the punitive-damages stage, Aspen, National Union, Zurich, and St. Paul collectively paid confidential amounts toward a settlement with the patron. National Union's and St. Paul's equal contributions exhausted their respective policy limits to resolve Marquee and Cosmopolitan's liability.

Following the settlement, St. Paul brought this lawsuit and asserted equitable and contractual subrogation claims on behalf of Cosmopolitan against National Union for breach of the implied covenant of good faith and fair dealing and breach of the insurance contract, as well as a direct claim against National Union for equitable contribution, over National Union's resolution of the patron's lawsuit. St. Paul also brought statutory subrogation claims on behalf of Cosmopolitan against Marquee for statutory contribution and contractual indemnification based on the management agreement between Marquee and Cosmopolitan's subsidiary. After National Union and Marquee separately moved for summary judgment on all claims, the district court granted summary judgment based on, among other reasons, its conclusion that Cosmopolitan did not suffer

damages to subrogate. The district court certified the orders granting summary judgment as final under NRCP 54(b). This appeal follows.

We review de novo a district court's grant of summary judgment. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). "Summary judgment is appropriate under NRCP 56 when . . . no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Id.* at 731, 121 P.3d at 1031. This court views "the evidence, and any reasonable inferences drawn from [the evidence] . . . in a light most favorable to the nonmoving party." *Id.* at 729, 121 P.3d at 1029.

*St. Paul's equitable and contractual subrogation claims against National Union are not cognizable because Cosmopolitan suffered no damages*

St. Paul asks us to recognize equitable and contractual subrogation between equal-level excess insurers.[3] Subrogation applies when one party, the subrogee, involuntarily pays the obligation or loss of another, the subrogor, for which a third party, wrongdoer, or otherwise is eventually found to bear responsibility. *See AT & T Techs., Inc. v. Reid*, 109 Nev. 592, 595-96, 855 P.2d 533, 535 (1993). Equitable and contractual subrogation "exist[ ] independently of" each other, insofar as equitable subrogation derives from equity and contractual subrogation arises out of an agreement. *See id.* at 596, 855 P.2d at 535. However, in either situation, the subrogee acquires no greater rights than the subrogor. *See Houston v. Bank of Am. Fed. Sav. Bank*, 119 Nev. 485, 488, 78 P.3d 71, 73 (2003) (describing how, in the context of mortgages, subrogation permits a subrogee to "assume the same . . . position" as the subrogor (internal

---

[3]By "equal-level insurers," we mean insurers that provide the same type of coverage to a mutual insured, such as two excess insurers.

quotation marks omitted) (quoting *Mort v. United States, 86 F.3d 890, 893 (9th Cir. 1996)*)). Subrogation creates derivative rights and requires an underlying independent basis upon which the subrogor could have recovered the payment as if the subrogee had never stepped in to assume the loss. *See Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368, 252 P.3d 206, 208 (2011) (stating that under the principle of subrogation "an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party" (internal quotations omitted) (quoting *Subrogation, Black's Law Dictionary* (9th ed. 2009))).

We do not need to reach the scope of equitable or contractual subrogation here because Cosmopolitan lacks an underlying claim to subrogate. *See Bierman v. Hunter*, 988 A.2d 530, 543 (2010) (explaining that the subrogee's right to recover a payment via subrogation requires an actionable underlying claim to assert). The implied covenant of good faith and fair dealing in every insurance contract imposes on the insurer the duty to defend and the duty to indemnify every insured. *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 309, 212 P.3d 318, 324 (2009). An insurer's breach of these duties gives rise to tort and contract liability. *Id.* at 308, 212 P.3d at 324; *Century Sur. Co. v. Andrew*, 134 Nev. 819, 821, 432 P.3d 180, 183 (2018). While the insurer has a "right to control settlement discussions and . . . litigation against the insured, the duty to defend includes the duty to act reasonably "during negotiations." *Miller*, 125 Nev. at 309, 212 P.3d at 324-25. This "duty to settle" requires the insurer to protect the insured from "unreasonable exposure to a judgment in excess of the" insured's liability coverage limit to the extent an opportunity to settle arises. *Restatement of Liability Insurance* § 24 cmt. b (Am. Law Inst. 2019). Breach

of this duty may render the insurer liable for the entire amount of the excess judgment, regardless of the policy's actual coverage limits. *See Miller*, 125 Nev. at 313-14, 212 P.3d at 327-28; *Andrew*, 134 Nev. at 826, 432 P.3d at 186. However, exhaustion of the policy limits prior to an excess judgment necessarily protects the insured from the harm that the duties purport to avoid. *See Safeco Ins. Co. of Am. v. Superior Court of Contra Costa Cty.*, 84 Cal. Rptr. 2d 43, 46 (Ct. App. 1999) (concluding that the "cause of action for bad faith refusal to settle arises only after a judgment has been rendered in excess of the policy limits"). Here, National Union, along with Aspen, Zurich, and St. Paul, guaranteed Cosmopolitan financial "security, protection, and peace of mind" when they settled Cosmopolitan's liability before excess-judgment exposure. *See Ainsworth v. Combined Ins. Co. of Am.*, 104 Nev. 587, 592, 763 P.2d 673, 676 (1988). Therefore, Cosmopolitan did not suffer damages which would give rise to either a bad-faith claim or a breach-of-contract claim. St. Paul thus lacks any claim to assert on behalf of Cosmopolitan against National Union.

*St. Paul's equitable contribution claim against National Union is not cognizable because each insurer exhausted their policy limits*

St. Paul asks this court to recognize an equitable contribution claim between equal-level insurers. Contribution allows one party "to extinguish joint liabilities through payment to the injured party, and then seek partial reimbursement" from a co-obligor "for sums paid in excess of" the party's "equitable share of the common liability." *Doctors Co. v. Vincent*, 120 Nev. 644, 650-51, 98 P.3d 681, 686 (2004). Equitable contribution, as opposed to statutory or contractual contribution, applies anytime two or more parties "hav[e] a common obligation, either in contract or tort," regardless of whether parties "signed separate" agreements. 18 Am. Jur. 2d *Contribution* § 6.

We have previously suggested that Nevada permits contribution claims between insurers. *See Ardmore Leasing Corp. v. State Farm Mut. Auto. Ins. Co.*, 106 Nev. 513, 514-15, 796 P.2d 232, 232-33 (1990) (concluding that insurer was "not entitled to judgment as a matter of law" on its contribution and indemnity claims against other insurer because "[g]enuine issues of fact still exist[ed] as to the extent of coverage provided" in the insurers' policies). But we do not need to reach whether to recognize equitable contribution between equal-level insurers here, as St. Paul did not contribute a disproportionate share. Equitable contribution only allows reimbursement to the extent that an insurer "paid over its proportionate share of the obligation" compared to the other insurers, because all the insurers collectively and "equally" share in "their respective coverage of the risk." *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 77 Cal. Rptr. 2d 296, 303 (Ct. App. 1998) (emphasis omitted). Here, National Union and St. Paul undisputedly contributed their full policy limits to the settlement of the patron's lawsuit. St. Paul's contribution claim would effectively permit it to recover full reimbursement from National Union. However, contribution operates on the principle that the parties *share* equal obligation to pay the loss. *See Doctors Co.*, 120 Nev. at 651, 98 P.3d at 686; *see also* 18 Am. Jur. 2d *Contribution* § 3 (observing that contribution works to distribute a common burden or liability proportionate to each actor's share of responsibility). Thus, St. Paul cannot seek equitable contribution from National Union.

*The subrogation waiver in the management agreement between Marquee and Cosmopolitan's subsidiary binds Cosmopolitan and prevents St. Paul's contractual subrogation claim against Marquee*

St. Paul argues that a subrogation waiver in a management agreement between Marquee and Cosmopolitan's subsidiary does not

trigger an endorsement in St. Paul's excess policy with Cosmopolitan that waives St. Paul's right to recover via subrogation to the extent that its insured also waives its right to recover via subrogation. We review issues of contract interpretation de novo. *Bielar v. Washoe Health Sys., Inc.*, 129 Nev. 459, 465, 306 P.3d 360, 364 (2013). Generally, only parties who "agree[ ] . . . to submit" to a contract remain bound by its provisions. *See Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 124 Nev. 629, 634, 189 P.3d 656, 660 (2008) (discussing enforceability of arbitration agreement against "nonsignatory"). However, a nonparty who qualifies as "an intended third-party beneficiary" is empowered to enforce a contract against a contracting party. *Canfora v. Coast Hotels & Casinos, Inc.*, 121 Nev. 771, 779, 121 P.3d 599, 604 (2005). A third-party beneficiary is a party whom the contracting parties "clearly" intended "to benefit" and foreseeably relies on the agreement. *Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 379, 566 P.2d 819, 824-25 (1977).

Here, while Cosmopolitan is not a party to the management agreement between Cosmopolitan's subsidiary and Marquee, Cosmopolitan is a third-party beneficiary. Even though Cosmopolitan signed the agreement and agreed to 20 specified provisions, a party only becomes bound as a party to a contract if it agrees with the other party to the essential terms and exchanges consideration. *See Certified Fire Prot. Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 378, 283 P.3d 250, 255 (2012) (explaining that the "meeting of the minds exists when the parties have agreed upon the contract's essential terms"). National Union does not identify any essential terms of the management agreement to which Cosmopolitan agreed. However, the indemnification provision in the management agreement, which St. Paul seeks to subrogate on behalf of

Cosmopolitan, aims to protect or compensate a third party, here, Cosmopolitan, for losses incurred because of Marquee's actions. Thus, the contracting parties to the management agreement intended to benefit Cosmopolitan. Moreover, the management agreement expressly identifies Cosmopolitan as an intended third-party beneficiary with respect to any rights or obligations assigned, delegated, or shared by its subsidiary. Accordingly, Cosmopolitan is a third-party beneficiary to the management agreement for purposes of the indemnification provision.

While a third-party beneficiary enjoys "the same rights and remedies . . . as a promisee of the contract," 9 John E. Murray, Jr., *Corbin on Contracts* § 46.1 (2022), it also takes those rights and remedies "subject to any defense arising from the contract . . . assertible against the promisee," *Gibbs v. Giles*, 96 Nev. 243, 246-47, 607 P.2d 118, 120 (1980). This means that an intended third-party beneficiary's rights remain limited by any conditions or burdens imposed in the contract. *See, e.g., Mercury Cas. Co. v. Maloney*, 6 Cal. Rptr. 3d 647, 649 (Ct. App. 2003) (stating that a "third party beneficiary takes the benefits subject to the conditions and limitations set forth in the contract"); *Mendez v. Hampton Court Nursing Ctr., L.L.C.*, 203 So. 3d 146, 149 (Fla. 2016) (stating the court "will ordinarily enforce an arbitration clause" against a third-party beneficiary); *Sanders v. Am. Cas. Co. of Reading*, 74 Cal. Rptr. 634, 637 (Ct. App. 1969) (applying one-year statute of limitations in contract to bar claim by third-party beneficiary to enforce contract and explaining that "the third-party [beneficiary] cannot select the parts favorable to him and reject those unfavorable to him"). Here, Cosmopolitan obtains no greater right to indemnification than its subsidiary and bears the same contractual burdens of its subsidiary. These provisions in the management agreement

collectively provide that any insurance maintained by Cosmopolitan's subsidiary or by Cosmopolitan must contain a subrogation waiver against Marquee. Indeed, Cosmopolitan's policy with St. Paul contains such a waiver. St. Paul cannot enforce the benefits of the indemnification provision beyond what the contract provides. The subrogation waiver in the management agreement binds Cosmopolitan, as an intended third-party beneficiary, and triggers the subrogation-waiver endorsement in St. Paul's policy. That waiver bars subrogation of Cosmopolitan's contractual indemnification claim.

*The indemnification provision in the management agreement precludes alternative remedies by Cosmopolitan*

St. Paul argues, alternatively, that it may assert, via subrogation, a claim for contribution pursuant to NRS 17.225 against Marquee. NRS 17.225(1) provides a right of contribution "where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death." The right of contribution "exists only in favor of a tortfeasor who has paid more than his or her equitable share of the common liability," and remains "limited to the amount paid by the tortfeasor in excess of his or her equitable share." NRS 17.225(2). However, statutory contribution does not "exist[ ] where indemnity exists." *Van Cleave v. Gamboni Constr. Co.*, 101 Nev. 524, 529, 706 P.2d 845, 848 (1985) (emphasis omitted); *see also* NRS 17.265. "When the duty to indemnify arises from contractual language, it generally is not subject to equitable considerations; 'rather, it is enforced in accordance with the terms of the contracting parties' agreement.'" *Reyburn Lawn & Landscape Designers, Inc. v. Plaster Dev. Co.*, 127 Nev. 331, 339, 255 P.3d 268, 274 (2011) (quoting *Prince v. Pac. Gas & Elec. Co.*, 202 P.3d 1115, 1120 (Cal. 2009)). "Nevada has not adopted an anti-indemnity statute," thus

Supreme Court
OF
Nevada

(O) 1947A

9

"parties have great freedom in allocating indemnification responsibilities between one another." *Id.* Accordingly, we enforce contractual-indemnity provisions on their terms so long as they use sufficiently "clear and unequivocal" language. *Id.* at 339-40, 255 P.3d at 274-75. As noted above, Marquee, Cosmopolitan's subsidiary, and Cosmopolitan contracted for Marquee to indemnify Cosmopolitan for certain losses. Neither of the parties challenge the indemnification provision's language as unclear or equivocal. It is thus enforceable and is mutually exclusive of a right to contribution. Accordingly, Cosmopolitan lacks a contribution claim to subrogate. *See Bierman*, 988 A.2d at 543 (explaining that the subrogee's right to recover a payment via subrogation requires an actionable underlying claim to assert).

Accordingly, we

ORDER the judgment of the district court AFFIRMED.[4]

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Pickering

_____, J.
Herndon

---

[4]The Honorable Abbi Silver having retired, this matter was decided by a six-justice court.

CADISH, J., with whom, STIGLICH, J., agrees, concurring in part and dissenting in part:

This case raises a question of first impression regarding the circumstances under which an insurer may subrogate its insured's bad-faith and breach-of-contract claims against another insurer. Rather than address this question, the majority, in my view, misapplies basic precepts of subrogation to dismiss St. Paul's equitable and contractual subrogation claims against respondent National Union. The majority holds that exhaustion of the policy limits by the four involved insurers avoided any damages to St. Paul's insured, and therefore, precluded subrogation by St. Paul. In so holding, the majority misconstrues the nature of St. Paul's payment on behalf of its insured. Because the payment reflects the insured's damages and subrogates St. Paul to its insured's claims against National Union, I cannot agree with the majority's decision today. I therefore dissent in part.[5]

As the majority correctly outlines, subrogation only creates derivative rights: it permits the paying party, or subrogee, to step into the shoes of the injured party, or subrogor, and pursue recovery from the responsible third-party wrongdoer to the extent that the subrogor possesses a cognizable claim against that third party. *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 957 (9th Cir. 2013). Thus, the subrogee's recovery under subrogation principles requires that the subrogor's loss remains independently recoverable from the third party whose actions caused the loss, as if the subrogee had never stepped in to

---

[5]I concur with the rest of the majority's order affirming the district court's dismissal of St. Paul's contribution claim against National Union and dismissal of St. Paul's subrogation claims against Marquee.

assume the loss. *See id.* (describing subrogation as "a purely derivative right—meaning that the subrogee succeeds to rights no greater than those of the subrogor"); *see also Bierman v. Hunter*, 988 A.2d 530, 543 (Md. Ct. Spec. App. 2010) (explaining that because the subrogee "'can exercise no right[s]'" greater than the subrogor, "subrogation 'requires an underlying and independent legal basis upon which a party may assert its claims'" (internal alterations and emphasis omitted) (quoting *Hill v. Cross Country Settlements, L.L.C.*, 936 A.2d 343, 362, 363 (Md. 2007))), *superseded on other grounds by* Md. Rule 14-305 *as discussed in Bates v. Cohn*, 9 A.3d 846, 858 (Md. 2010).

In applying these principles, I believe the majority misconstrues applicable law. The majority concludes that St. Paul lacks a cognizable claim to which to subrogate because the insurers, including St. Paul, collectively exhausted their policy limits towards a settlement of Cosmopolitan's liability post-verdict, but pre-judgment. The majority reasons that, consequently, the insurers' settlement avoided any out-of-pocket expenses or damages to Cosmopolitan. It is true that, in the literal sense, Cosmopolitan never suffered damages because of St. Paul's settlement contribution (and by extension, the fortuity that Cosmopolitan obtained more than one applicable policy). However, such reasoning fails to recognize that subrogation substitutes the parties as if the subrogee had never assumed the subrogor's loss. *See Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368-69, 252 P.3d 206, 208 (2011) (discussing that full payment subrogates the insurer to the insured's claims against the third-party wrongdoer that arose before the payment occurred); *Wimer v. Pa. Emps. Benefit Tr. Fund*, 939 A.2d 843, 853 (Pa. 2007) (agreeing that because "a subrogee must first tender payment . . . before a right to subrogation

accrues," subrogation "presupposes a payment by the subrogee to" or on behalf of "the subrogor"). In the legal sense, "[p]ayment by the insurance company does not change the fact a loss has occurred," and instead, reflects the loss suffered by the insured. *Troost v. Estate of DeBoer*, 202 Cal. Rptr. 47, 50 (Ct. App. 1984). As the California Court of Appeals explained in addressing an insurer's subrogation claim,

> The only reason [the insured] had no out-of-pocket expense was because its insurer, now seeking subrogation, made the payment. Under [the] view [that the insurer's payment obviated damages], no insurer could ever state a cause of action for subrogation in order to recover amounts it paid on behalf of its insured, because of the very fact that it had paid amounts on behalf of its insured. Not only is this illogical, [but also] it contradicts decades of cases consistently holding that an insurer may be equitably subrogated to its insured's indemnification claims.

*Interstate Fire & Cas. Ins. Co. v. Cleveland Wrecking Co.*, 105 Cal. Rptr. 3d 606, 615 (Ct. App. 2010) (emphasis omitted).

Under this subrogation principle, Cosmopolitan, the subrogor, would have unquestionably been subject to liability for the remaining amount of the settlement if St. Paul, the subrogee, had not paid its contribution towards the settlement in accordance with Cosmopolitan's insurance policy. And assuming the truth of St. Paul's allegations, as we must at the motion-to-dismiss stage, *see Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008) (treating factual allegations in a complaint "as true" and drawing inferences in the plaintiff's favor on a motion to dismiss for failure to state a claim for relief), National Union, the third party, caused the settlement to exceed its policy limits by its breach of the contract- and tort-based duty to settle, *see Hamada v. Far*

*E. Nat'l Bank*, 291 F.3d 645, 649 (9th Cir. 2002) (explaining that the derivative claim lays against the third-party wrongdoer who caused the subrogor's loss). According to the complaint, National Union took control of the litigation against Cosmopolitan and rejected several offers to settle liability below or at its policy limits, despite its own retained counsel's assessment of the damages at over 10 times the amount of National Union's policy limits. Only after the jury rendered an excess verdict six times the policy limits did National Union finally orchestrate a settlement of Cosmopolitan's liability in excess of its policy limits. Accepting these allegations as true, had Cosmopolitan, rather than St. Paul, paid the remaining portion of the settlement, Cosmopolitan could have independently sued National Union to recover those damages under breach-of-contract and bad-faith theories.[6] *See Century Sur. Co. v. Andrew*, 134 Nev. 819, 821, 432 P.3d 180, 183 (2018) (recognizing contract liability for breach of the duty to defend); *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 309, 212 P.3d 318, 324 (2009) (recognizing insurer's duty to act reasonably during settlement negotiations as derived from insurer's duty to defend). Ultimately, St. Paul covered Cosmopolitan's exposure that exceeded National Union's policy limits. But the very fact of St. Paul's payment does

---

[6]Contrary to the majority's position, we have said that exhaustion of policy limits *does not* automatically foreclose an insured's damages under breach-of-contract or bad-faith theories. *See Andrew*, 134 Nev. at 825-26, 432 P.3d at 185-86 (holding that, in the context of an excess judgment, breach of the insurance contract subjects an insurer to liability for expectation and consequential damages, which may exceed the policy limits); *cf. Miller*, 125 Nev. at 314, 212 P.3d at 327-28 (explaining that, in the context of an excess judgment, an insurer's breach of the duty to settle subjects it to "all compensatory damages proximately caused by its breach," which may exceed the policy limits).

not negate Cosmopolitan's loss; instead, St. Paul became subrogated to Cosmopolitan's independently cognizable claims against National Union for the amount of its payment on behalf of Cosmopolitan.

Because I believe a subrogatable loss exists, I would go one step further and address whether to recognize subrogation between equal-level insurers under the circumstances presented. While we have not previously recognized subrogation in this context, we have consistently "balance[d] the equities based on the facts and circumstances of each particular case" and applied subrogation to the extent necessary to "grant an equitable result between the parties." *Am. Sterling Bank v. Johnny Mgmt. LV, Inc.*, 126 Nev. 423, 428, 245 P.3d 535, 538 (2010) (internal quotation marks omitted). Moreover, many courts recognize equitable subrogation of the insured's bad-faith and breach-of-contract claims between insurers, albeit between primary and excess insurers. *See, e.g., Hartford Acc. & Indem. Co. v. Aetna Cas. & Sur. Co.*, 792 P.2d 749, 754 (Ariz. 1990) (permitting excess insurer to subrogate to rights of insured against primary insurer for primary insurer's bad-faith "failure to settle within policy limits"); *Com. Union Assurance Cos. v. Safeway Stores, Inc.*, 610 P.2d 1038, 1041 (Cal. 1980) (same); *Preferred Prof'l Ins. Co. v. Doctors Co.*, 419 P.3d 1020, 1028 (Colo. App. 2018) (same); *Home Ins. Co. v. N. River Ins. Co.*, 385 S.E.2d 736, 740 (Ga. Ct. App. 1989) (same); *Com. Union Ins. Co. v. Med. Protective Co.*, 393 N.W.2d 479, 483 (Mich. 1986) (same); *Cont'l Cas. Co. v. Reserve Ins. Co.*, 238 N.W.2d 862, 864 (Minn. 1976) (same); *Me. Bonding & Cas. Co. v. Centennial Ins. Co.*, 693 P.2d 1296, 1300 (Or. 1985) (same). While none of these decisions, nor any of the decisions relied on by the parties, addressed subrogation of an insured's bad-faith and breach-of-contract claims by one excess insurer against another equal-level excess insurer, our case law

SUPREME COURT
OF
NEVADA

(O) 1947A

directs courts to balance the equities before they decide or decline to apply subrogation to a given circumstance. Because I see no sound reason to depart from that principle here, I would recognize in appropriate situations the availability of subrogation between two excess insurers, and I therefore view the district court's decision foreclosing such a possibility as erroneous.

The majority, however, sidesteps the issue of subrogation between two excess insurers and instead concludes that Cosmopolitan suffered no damages based on the settlement payment by the insurers that resolved its personal liability. I cannot agree that Cosmopolitan suffered no damages by virtue of the insurers' exhaustion of their policy limits, as such a conclusion misapplies a fundamental presupposition of subrogation that the subrogee insurer's payment reflects the subrogor insured's loss. I therefore dissent in part.

_____, J.
Cadish

I concur:

_____, J.
Stiglich

Supreme Court
of
Nevada

(O) 1947A

cc: Hon. Gloria Sturman, District Judge
Lansford W. Levitt, Settlement Judge
Hutchison & Steffen, LLC/Reno
Hutchison & Steffen, LLC/Las Vegas
Lewis Roca Rothgerber Christie LLP/Las Vegas
Herold & Sager/Las Vegas
Keller/Anderle LLP/Irvine
Eighth District Court Clerk